# No. 25-2004

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES, *et al.*,

Plaintiffs-Appellants,

v.

JUDGE MATTHEW JAMES MADDOX, *et al.*,

Defendants-Appellees.

———————————

## APPELLANTS' MOTION TO DISMISS APPEAL AS MOOT AND VACATE OPINION AND JUDGMENT

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney General*

ELIZABETH HEDGES
SARAH WELCH
 *Civil Division*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(771) 209-1978*
 *Elizabeth.T.Hedges@usdoj.gov*

## INTRODUCTION

The government filed this lawsuit to challenge two standing orders of the District of Maryland (the "Orders"). After the district court dismissed the case and the government appealed, defendants (Appellees here) superseded the challenged Orders by issuing a new and materially different standing order (the "Second Amended Standing Order"). Thus, this appeal is moot. The government accordingly moves to dismiss. *See* Fed. R. App. P. 42(b)(2).

Because the appeal became moot through the actions of the parties that prevailed below, the government also seeks vacatur of the district court's opinion and judgment under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). Vacatur in these circumstances is a core application of *Munsingwear*. *See U.S. Bancorp Mort'g Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994) (explaining that vacatur is appropriate "when mootness results from unilateral action of the party who prevailed below"). And the public interest favors vacatur here, where mootness prevents "the demands of 'orderly

procedure'" from being "honored" through an ordinary appellate process.[1] *See id.* at 27 (citation omitted).

## BACKGROUND

### I. The Challenged Orders

1. On May 21, 2025, Chief Judge George L. Russell III of the District of Maryland signed Standing Order 2025-01. ECF No. 14-2.[2] The Standing Order applied to all cases filed on or after 5:00 pm on May 20, 2025, and purported to invoke the All Writs Act and a "limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action." *Id.* at 1-2. It provided:

> [U]pon the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on behalf of an alien detainee, the Government/Respondents, including all those acting for them or on their behalf, are ENJOINED and RESTRAINED from removing Petitioners in such cases from the continental United States or altering their legal status, provided that Petitioner's full name and A# have been provided to the Court, either in the Petition or in a separate sealed filing.

---

[1] Counsel for the government informed counsel for Appellees of the intent to file this motion. Counsel for Appellees represented that they oppose the relief requested herein.

[2] Citations to "ECF No." are to the district-court docket for this case, except where indicated.

*Id.* at 1. The Standing Order provided that it "shall be entered in every such case upon its filing," and that "its terms shall remain in effect until 4:00 p.m. on the second business day following the filing of the Petition," unless extended by the judge assigned to the case. *Id.* at 2. The court clerk began entering the Standing Order in habeas cases almost immediately. *See, e.g.*, *Ramos v. Noem*, 25-1673 (D. Md.), ECF No. 3 (May 27, 2025).

On May 28, 2025, Chief Judge Russell signed Amended Standing Order 2025-01, which superseded the original version. ECF No. 14-3. Like the original Standing Order, the Amended Standing Order invoked the All Writs Act and required the entry of a two-business-day injunction against removing, or altering the legal status of, an alien immediately once the alien filed a § 2241 petition. *Id.* at 1-2.

The Executive Branch made the Judicial Conference aware that it had substantive and procedural concerns with the Orders, which required entry of an automatic injunction regardless of whether the court had jurisdiction and regardless of the merits of the alien detainee's claim for relief — or even whether the alien detainee asked for emergency injunctive relief. *See* ECF No. 1 ¶ 48. However, no action was taken, and the district court clerk

3

continued entering the Amended Standing Order in new cases. *See, e.g.*, *Quintana Flores v. Bondi*, No. 25-1950 (D. Md.), ECF No. 2 (June 17, 2025).

2. The Orders interfered with Department of Homeland Security (DHS) component Immigration and Customs Enforcement's (ICE) efforts to enforce immigration law in a number of ways. ECF No. 1 ¶ 52. To take just one example, extremely limited bed space in Maryland meant that aliens detained there were generally transferred to a different location very quickly—sometimes before they filed a habeas petition. *Id.* ¶¶ 55-58. But the Orders did not allow ICE's Enforcement and Removal Operations component any opportunity to contest an alien's assertion of being "located in the District of Maryland" at the time of a habeas filing. *Id.* ¶ 56. In at least one instance, the Amended Standing Order was entered in a habeas case in which the petitioner was already in a different state and, therefore, the District of Maryland lacked jurisdiction. *Id.* ¶ 58.

**II.   This Lawsuit**

1. On June 24, 2025, the United States and DHS ("the government") filed a complaint in the District of Maryland seeking injunctive relief against implementation of the Orders and a declaratory judgment that the Orders were invalid. The complaint named as defendants the court itself, all of its

4

active judges, and its clerk. *Id.* ¶¶ 14-30. The complaint raised three claims. Count One alleged that the Orders violated federal law by bypassing mandatory substantive and procedural prerequisites for preliminary equitable relief. *Id.* ¶¶ 70-85. Count Two alleged that the Orders violated several jurisdictional bars and limitations on judicial review in the Immigration and Nationality Act. *Id.* ¶¶ 86-94. Count Three alleged that the Orders functioned as local rules and were invalid because they did not go through the notice-and-comment rulemaking procedure required by statute for such rules. *Id.* ¶¶ 95-101. At the same time it filed the complaint, the government moved to recuse all of the active judges and asked for the case to be transferred to a judge from another district. ECF No. 2.

This Court assigned the case to Judge Thomas Cullen of the Western District of Virginia. The government then filed a motion for a preliminary injunction. ECF No. 14. The preliminary-injunction motion sought to enjoin effectuation of the Orders on each of the three substantive grounds in the complaint. *Id.* at 10-19. Appellees opposed the preliminary-injunction motion and moved to dismiss. ECF Nos. 24, 25.

2. On August 26, 2025, Judge Cullen dismissed the suit on threshold grounds. Exhibit (ECF No. 58, Opinion); ECF No. 59. Judge Cullen first

5

concluded that the government lacked standing to pursue its claim for injunctive relief. Exhibit (ECF No. 58, Opinion) at 11-15. He also concluded that the district court had sovereign immunity and that federal judges retain judicial immunity for official acts like promulgating standing orders. *Id.* at 15-26. Last, he concluded that the government lacked a cause of action to sue a coordinate branch. *Id.* at 26-36.

The government appealed on August 26, 2025. ECF No. 60.

### III. The Second Amended Standing Order

On September 12, 2025, the District of Maryland released a proposed Second Amended Standing Order 2025-01, which would supersede the prior iteration, for notice and comment.[3] DHS submitted a comment opposing the rule.

---

[3] United States District Court for the District of Maryland, *Proposed Second Amended Standing Order 2025-01 (with edits shown)*, https://www.mdd.uscourts.gov/sites/mdd/files/Redline-SecondAmendedStandingOrder%202025-1.pdf (accessed January 14, 2026); *see also* United States District Court for the District of Maryland, *Proposed Amendments to the Local Rules* 2, https://www.mdd.uscourts.gov/sites/mdd/files/LocalRulesNoticePublic2025Supp.pdf (accessed January 14, 2026) (soliciting comments by November 12, 2025, on "proposed Second Amended Standing Order 2025-01").

On December 1, 2025—after the comment period closed—the District of Maryland adopted the Second Amended Standing Order.[4] It supersedes the two Orders challenged in this lawsuit. The District of Maryland's website no longer lists the two previous Orders under "Standing Orders."[5]

Unlike the previous Orders, the Second Amended Standing Order states that it shall be entered only when requested and only after the habeas petitioner certifies that he or she is detained in Maryland, that the District of Maryland has jurisdiction, and that "emergency relief is necessary." Second Amended Standing Order at 2. It provides for shortening or extending the effective period if necessary to give the presiding judge time "to make an intelligent decision" on the request for emergency relief. *Id.* (citation omitted). It also provides for dissolution "upon good cause shown by the Government/Respondents." *Id.*

---

[4] United States District Court for the District of Maryland, *Second Amended Standing Order 2025-01*, https://www.mdd.uscourts.gov/sites/mdd/files/Second%20Amended%202025-01.pdf (accessed January 14, 2026).

[5] *See* United States District Court for the District of Maryland, *Standing Orders*, https://www.mdd.uscourts.gov/standing-orders (accessed January 14, 2026).

7

## ARGUMENT

**I.  This Appeal Is Moot.**

Appellees' issuance of the Second Amended Standing Order moots this appeal. The government's suit sought solely prospective relief. But the challenged Orders are no longer in effect, and the Appellees' decision to supersede the Orders means this Court cannot now grant the government relief from them. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 338-39 (2020) (per curiam) (holding that "claim for declaratory and injunctive relief with respect to the City's old rule" was "moot" because city had "amended the rule"); *Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 564 (4th Cir. 2024) (holding that "[i]njunctive and declaratory challenges to repealed ordinances become moot if there is little practical likelihood that the ordinance will be reenacted"). The government "needs no prospective relief from provisions no longer in effect." *Adams Outdoor Advert.*, 105 F.4th at 564. And the government is aware of no reason to think the superseded Orders will be reenacted. Any remaining dispute would therefore be about the Second Amended Standing Order, and it would not be appropriate for the Court to "decide [a] dispute about the new" Order in the first instance on appeal. *See N.Y. State Rifle & Pistol Ass'n*, 590

U.S. at 339. Therefore, the Court should dismiss the appeal. *See Omeish v. Kincaid*, 86 F.4th 546, 554 (4th Cir. 2023) (dismissing appeal as moot).[6]

## II.  *Munsingwear* **Vacatur Is Warranted.**

When a case becomes moot on appeal, the Fourth Circuit "customarily vacate[s] the opinions and remand[s] with direction to dismiss." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021). Whether to vacate turns on "the twin considerations of fault and public interest." *Id.* at 327 (citation omitted). Both considerations favor vacatur here.

First, the government is not at fault for the appeal's mootness. A classic application of *Munsingwear* arises "when mootness results from unilateral action of the party who prevailed below." *U.S. Bancorp*, 513 U.S. at 25. That is precisely what happened here. After the district court entered judgment in their favor, and after the government appealed, Appellees acted unilaterally to supersede the Amended Standing Order. The government's lack of involvement in the circumstances leading to mootness supports

---

[6] To be clear, the government intends to monitor and evaluate how the Second Amended Standing Order is applied in practice, and will not hesitate to seek judicial relief, whether in a new pre-enforcement challenge or in particular cases, if its rights and interests are being unlawfully infringed.

9

vacatur. *See, e.g.*, *Peninsula Pathology Assocs. v. Am. Int'l Indus.*, No. 23-1972, 2025 WL 1731995, at *1 (4th Cir. June 18, 2025) (vacating district-court decision because appellant was "frustrated from securing appellate review . . . through no fault of its own" (cleaned up)); *Henslee v. Slagle*, No. 23-6353, 2024 WL 864324, at *1 (4th Cir. Feb. 29, 2024) (vacating district-court order because plaintiff had been transferred to a different prison, and his claims were moot); *Omeish*, 86 F.4th at 554 (finding "sufficient reason to vacate the judgment below" where appeal was moot and appellant was "frustrated from securing appellate review" (cleaned up)); *Eden, LLC v. Justice*, 36 F.4th 166, 172 (4th Cir. 2022) (similar).

Second, the public interest favors vacatur. As a general matter, *Munsingwear* vacatur is in the public interest because it "promotes the 'orderly operation of the federal judicial system.'" *Hirschfeld*, 14 F.4th at 327 (quoting *U.S. Bancorp*, 513 U.S. at 27). That is a prime reason why vacatur is the Court's "customary practice when a case is rendered moot on appeal." *Id.* (citation omitted). More specifically, the public interest is "no bar to vacatur" here, where the challenged Orders "no longer exist"; the District of Maryland's new standing order "ha[s] been substantially revised"; and

10

"there is no suggestion of" the previous Orders' "likely reenactment." *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000).

## CONCLUSION

The Court should dismiss the appeal as moot. It should also follow its "customary practice" in such cases and vacate the district court's opinion and judgment. *See Hirschfeld*, 14 F.4th at 327.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney General*

 */s/ Elizabeth Hedges*
ELIZABETH HEDGES
SARAH WELCH
  *Civil Division*
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (771) 209-1978
  Elizabeth.T.Hedges@usdoj.gov

11

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,054 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

                                                         */s/ Elizabeth Hedges*
                                                         Elizabeth Hedges

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

>                              */s/ Elizabeth Hedges*
>                              Elizabeth Hedges