No. 25-2004

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————

UNITED STATES OF AMERICA et al.,

*Plaintiffs-Appellants*,

v.

JUDGE MATTHEW JAMES MADDOX et al.,

*Defendants-Appellees*.

———————

On Appeal from the United States District Court
for the District of Maryland,
No. 1:25-cv-2029

———————

**DEFENDANTS-APPELLEES' RESPONSE TO MOTION TO DISMISS**

———————

PAUL D. CLEMENT
  *Counsel of Record*
ERIN E. MURPHY
MATTHEW D. ROWEN
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendants-Appellees*

January 30, 2026

## CORPORATE DISCLOSURE STATEMENT

To the extent Fourth Circuit Rule 26.1(a)(1)(A) requires Defendants-Appellees to file a disclosure statement, Defendants-Appellees hereby certify that no Defendant-Appellee is a publicly held entity, has any parent corporation, or is a trade association. Defendants-Appellees further certify that no publicly held entity has a direct financial interest in the outcome of the litigation, that this case does not arise out of a bankruptcy proceeding, and that this is not a criminal case in which there was an organizational victim.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.     This Case Is Not Moot. ................................................................................ 2

    II.    Vacatur Is Not Warranted. ........................................................................... 5

CONCLUSION ........................................................................................................ 8

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

The Judges and Clerk of the United States District Court for the District of Maryland (collectively, "Defendants") take no issue with the Executive's decision to voluntarily dismiss its appeal. Quite the contrary: This extraordinary lawsuit never should have been filed, and once Judge Cullen thoroughly repudiated it as violating bedrock principles of separation of powers, Article III jurisdiction, equity practice, and immunity, the Executive should never have appealed. Ideally, a lawsuit like this will never be filed again. Unfortunately, however, the Executive does not appear to share that view, as it has expressly reserved the right to bring another lawsuit just like this one, challenging the Second Amended Standing Order on its face.

The most obvious bulwark against another such action and all the disruption it would entail is Judge Cullen's thoughtful and persuasive opinion. While the Executive *could* ask this Court to review and reverse that decision—albeit at the considerable risk that this Court would affirm it and establish circuit precedent categorically foreclosing future efforts—the Executive has instead "voluntarily abandon[ed] review" in hopes of "employ[ing] the secondary remedy of vacatur as a refined form of collateral attack on the judgment," all while refusing to disclaim the possibility of bringing another facial attack. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26-28 (1994). That tactical decision confirms not only that this case is not actually moot, but that vacatur pursuant to *United States v.*

1

*Munsingwear, Inc.*, 340 U.S. 36 (1950), would be wholly inappropriate, as it would effectively give the Executive the relief it would obtain if it prevailed on appeal, with zero risk of affirmance. Accordingly, while Defendants have no objection to the Executive's decision to dismiss its appeal, this Court should reject the Executive's request to obtain via vacatur the same basic relief it has declined to seek via appeal.

## ARGUMENT

### I. This Case Is Not Moot.

Defendants have no interest in prolonging this litigation, which never should have been brought. But while the Executive has decided to dismiss this appeal in light of the issuance of the Second Amended Standing Order, it has expressly reserved the right to challenge that order facially via affirmative litigation (rather than as-applied in an individual case)—even though any such effort would plainly be barred several times over by the decision below. The parties' dispute accordingly remains very much live.

The gravamen of the Executive's complaint was that two standing orders—Standing Order 2025-01, promulgated on May 21, 2025, and Amended Standing Order 2025-01, promulgated on May 28, 2025—(i) improperly granted equitable relief to habeas petitioners without "a case-specific finding that an irreparable injury is imminent" (Count 1); (ii) "exceed[ed]" federal district courts' "jurisdiction and authority" under the Immigration and Nationality Act (Count 2), and (iii) violated

2

28 U.S.C. §2071's requirement that federal district courts "adopt[]" local rules—but not standing orders—"via notice-and-comment rulemaking" (Count 3). D.Ct.Dkt.1 ¶¶31, 39, 43-44, 80, 88, 98. Although Defendants contest the Executive's characterization of the standing orders as local rules and the applicability of §2071, *see* D.Ct.Dkt.24-1 at 36-37, in a gesture of "reciprocal respect for the roles of the Executive and the Judiciary," *Abrego Garcia v. Noem*, 2025 WL 1021113, at *8 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring), and to receive the benefit of public comment, the District of Maryland gave the public notice of proposed modest changes to Amended Standing Order 2025-01 and invited comment (which the Executive provided). *See* Notice of Proposed Amendments to the Local Rules (Sept. 12, 2025), https://perma.cc/W5DX-QV29. The Court then issued the Second Amended Standing Order on December 1, 2025.

The Second Amended Standing Order has certainly mooted some aspects of this dispute (e.g., Count 3 regarding notice and comment). But it has not mooted the Executive's challenge as a whole, as the Executive has insisted on reserving the right to continue to press comparable affirmative challenges to the Second Amended Standing Order, just as it pressed its challenges to both the Standing Order and the Amended Standing Order in its complaint here, even though the latter had by then superseded the former. *See* D.Ct.Dkt.1. Indeed, the Executive candidly concedes that it "will not hesitate to seek judicial relief," including "in a new pre-enforcement

3

challenge," if it continues to believe that "its rights and interests are being unlawfully infringed." Mot.9 n.6.

That is hardly a remote possibility when the Executive has already made plain in its formal comment that it views the Second Amended Standing Order as "equally misguided" as its predecessors. Letter from Todd M. Lyons, Acting ICE Dir., to Suzanne C. Johnson, Loc. Rules & Forms Comm., at 2 (Nov. 10, 2025), *attached as* Ex.A; *see also id.* at 3 (contending that "[t]he [First] Amended Standing Order *and* [*Second*] *Amended Order* impair and frustrate ICE removal efforts" (emphasis added)). The Executive thus clearly does not think that the amendments to the challenged orders moot its challenges; it just apparently would prefer to press those challenges in a new lawsuit instead of in this one, especially if it can wipe out Judge Cullen's opinion with zero risk of affirmance.

That is understandable; the decision below, while not technically precedential, stands as an obvious obstacle to any executive effort to bring an affirmative challenge to the Second Amended Standing Order so long as it remains on the books. But the Executive's insistence on reserving the right to press the same challenges to the Second Amended Standing Order confirms that this appeal is not moot, as the Executive *could* "press on," *Brusznicki v. Prince George's Cnty.*, 42 F.4th 413, 419 (4th Cir. 2022), and request the "effectual relief" of reversal of Judge Cullen's threshold determinations so it would be free to press those challenges below, *N.C.*

4

*A. Philip Randolph Inst. v. N.C. State Bd. of Elections*, 155 F.4th 298, 306 (4th Cir. 2025). It has just chosen not to do so—apparently in hopes of securing the same effective relief via vacatur pursuant to *Munsingwear*, instead of by pursuing its appeal and asking this Court to review the substance of Judge Cullen's decision. But *Munsingwear* is not a shortcut for parties who would rather not have to persuade a reviewing court that the decision under review is incorrect. It is available only when there is no longer any effectual relief to grant (and even then, only under circumstances not present here, *see infra* Part II). Because a decision by this Court reversing or vacating Judge Cullen's decision would enable the Executive to press the challenges it continues to preserve to the Second Amended Standing Order in *this* case, this case is not moot.

## II. Vacatur Is Not Warranted.

Even if this case were moot, the Executive's refusal to disavow any intention of affirmatively challenging the Second Amended Standing Order underscores that there would be no basis for vacatur. The Executive suggests that vacatur follows from a mootness determination as a matter of course. It does not. As in every case when a "party seek[s] relief from [a] … judgment," the Executive would still have to "demonstrate … equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U.S. at 26; *see, e.g.*, *Shenandoah Valley Network v. Capka*, 669 F.3d 194, 202 n.\* (4th Cir. 2012). If anything, "the extraordinary nature" of that remedy

5

translates into a "general presumption *against* vacatur," as one of the Executive's own cases explains. *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000) (emphasis added), *cited with approval*, Mot.11. And "the public interest" overwhelmingly reinforces that presumption when "there is [some] suggestion" that the dispute might recur. *Id.* at 121.

Here, every equitable factor counsels against vacatur. As explained, there is far more than a mere suggestion of recurrence; the Executive has expressly reserved the right to sue all over again. *See* Mot.9 n.6; *supra* pp.3-4. And if the Executive were to follow through on that threat, that would be just as disruptive as this case proved to be the first time around—interrupting the operations of the District of Maryland, pulling a busy out-of-district judge away from the cases in his/her duty station, and precipitating more briefing and argument by private out-of-district counsel at taxpayer expense. What is more, this case is a perfect example of what the Supreme Court has deemed a distinct "*lack* of equity": The Executive's actions amount to "voluntarily abandon[ing appellate] review" in hopes of "employ[ing] the secondary remedy of vacatur as a refined form of collateral attack on the judgment." *Bancorp*, 513 U.S. at 26-28 (emphasis added). That is the very last context in which the extraordinary remedy of *Munsingwear* vacatur is warranted.

The Executive does not meaningfully try to carry its burden to show otherwise. It just insists that "vacatur is the Court's 'customary practice when a case

6

is rendered moot on appeal.'" Mot.10 (quoting *Hirschfeld v. ATF*, 14 F.4th 322, 327 (4th Cir. 2021)). Again, that is incorrect. The Supreme Court has made clear that "not every moot case will warrant vacatur," *Azar v. Garza*, 584 U.S. 726, 729 (2018) (per curiam), and this Court treats vacatur as "customary" only when it is supported "by the twin considerations of fault and public interest." *Hirschfeld*, 14 F.4th at 327 & n.5; *accord Bancorp*, 513 U.S. at 26 ("As always when federal courts contemplate equitable relief," assessing a movant's entitlement to vacatur "must … take account of the public interest.").

Neither consideration is present here. There was certainly no "fault" in Defendants' effort to refine the standing order and ensure an opportunity for public comment. The standing orders were from the beginning an effort to ensure a modest interval for the judicial system to play its constitutionally assigned role. The process that culminated in the promulgation of the Second Amended Standing Order, in particular, was a good faith effort to lower the temperature in an "incipient crisis" and a gesture of "reciprocal respect for the roles of the Executive and the Judiciary." *Abrego Garcia*, 2025 WL 1021113, at *8 (Wilkinson, J., concurring). And the public interest strongly counsels against vacatur when, as here, the movant voluntarily "steps off the statutory path" of "appeal as of right" and tries to achieve the same end (eliminating an adverse threshold ruling) via a "secondary remedy." *Bancorp*, 513 U.S. at 27. To the contrary, when "the demands of 'orderly procedure' can[] be

7

honored," "the public interest requires" them to be. *Id.* (citation omitted) (quoting *Munsingwear*, 340 U.S. at 41).[1]

## CONCLUSION

While Defendants do not object to dismissal of this appeal, the Court should not vacate Judge Cullen's opinion and judgment.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
  *Counsel of Record*
ERIN E. MURPHY
MATTHEW D. ROWEN
KEVIN WYNOSKY
CLEMENT & MURPHY, PLLC
706 Duke Steet
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendants-Appellees*

January 30, 2026

---

[1] If the Court has any doubts about that, then it should at the very least give Judge Cullen the opportunity to weigh in on the propriety of vacatur first. *See Bancorp*, 513 U.S. at 29; *Valero*, 211 F.3d at 119 n.3.

8

# CERTIFICATE OF COMPLIANCE

1. This response complies with Federal Rule of Appellate Procedure 27(d)(2)(A)'s type-volume limitation because, according to the word count function of Microsoft Word for Microsoft 365, it contains 1801 words, excluding the parts that Federal Rule of Appellate Procedure 32(f) exempts from the word count.

2. This response complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because the brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

s/Paul D. Clement  
Paul D. Clement

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants are registered CM/ECF users and that the CM/ECF system will accomplish service.

<u>s/Paul D. Clement</u>
Paul D. Clement