# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, *et al.*,

*Plaintiffs-Appellants,*

v.

JUDGE MATTHEW JAMES MADDOX, *et al.,*

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Maryland, No. 1:25-cv-02029, The Honorable Thomas T. Cullen, United States District Judge (sitting by designation)

**BRIEF FOR LAWYERS DEFENDING AMERICAN DEMOCRACY AND ITS MARYLAND CHAPTER, MD-LDAD; THE SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, INC., D/B/A/ THE SOCIETY FOR THE RULE OF LAW; AND JUDGE J. MICHAEL LUTTIG AS AMICI CURIAE IN SUPPORT OF APPELLEES**

H. Mark Stichel
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
Phone: (443) 379-8987
Fax:  (443) 379-4013
hmstichel@rkwlawgroup.com

*Counsel for Amici Curiae*

M. Natalie McSherry
750 East Pratt St., Suite 1100
Baltimore, MD 21202
Phone: (410) 752-6030
nmcsherry@kg-law.com

*Counsel for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Lawyers Defending American Democracy (LDAD) is a non-partisan, tax-exempt 501(c)(3) organization. LDAD is not owned by any parent corporation nor does any publicly held company own 10 percent or more of LDAD. Maryland Lawyers Defending American Democracy (MD-LDAD) is an LDAD affiliate state chapter whose purpose is to promote and advance the mission of LDAD in Maryland.

The Society for the Rule of Law and Democracy, Inc., doing business as The Society for the Rule of Law (SRL), is a non-partisan, tax-exempt 501(c)(3) organization. SRL is not owned by any parent corporation nor does any publicly held company own ten percent or more of SRL.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES .................................................................. iii

IDENTITY AND INTEREST OF AMICI CURIAE ..............................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ...................................................................................3

*The District Court Properly Exercised Its Inherent Authority in Response to Governmental Conduct Likely to Deprive the Court of Jurisdiction*

1. The Government's Precipitous Deportation of Kilmar Abrego Garcia. .........4

2. The Government's Transportation of Maryland Habeas Petitioners to ICE Detention Facilities Nationwide Makes it Difficult or Impossible For Their Attorneys to Know Whether Their Clients Have Been Taken Elsewhere. ............8

i. The Hernandez Escalante Case ...................................................10

ii. The Badar Khan Suri Case ........................................................11

iii. The Rumeysa Ozturk Case .......................................................12

CONCLUSION.................................................................................16

CERTIFICATE OF COMPLIANCE.........................................................17

CERTIFICATE OF SERVICE ...............................................................17

ADDENDUM .................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Abrego Garcia v. Noem*, 799 F. Supp. 3d 501 (D. Md. 2025) ...................................5

*Abrego Garcia v. Noem*, 8:25-cv-00951-PX, 2025 U.S. Dist. LEXIS 68129 (D. Md. Apr. 4, 2025) ...................................................................................................5

*Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 U.S. Dist. LEXIS 70951 (D. Md. Apr. 10, 2025 ......................................................................................... 5

Abrego Garcia v. Noem, 811 F. Supp. 3d 741 (D. Md. 2025) ............................ 7, 8

*Cruz-Medina v. Noem*, 794 F. Supp. 3d 365 (D. Md. 2025) ...................................8

*Cruz-Medina v. Noem*, 806 F. Supp. 3d 536 (D. Md. 2025) ...................................8

*Cruz- Medina v. Noem*, No 25-cv-1768-ABA, 2025 U.S. LEXIS 222164 (D. Md. Nov. 12, 2025)...........................................................................................8

*Dietz v. Bouldin*, 579 U.S. 40 (2016)....................................................................3

*Escalante v. Noem*, 2026 U.S. App. LEXIS 11507 (5th Cir. Apr. 22, 2026)..........11

*Escalante v. Noem*, 9:25-cv-00182-MJT,  2025 U.S. Dist. LEXIS 148899 (E.D. Tex. 2025) ...............................................................................................11

*Garcia v. Noem*, No. 25-1404, 2025 LEXIS 202536 (4th Cir. Apr. 17, 2025) ....................................................................... 5, 6

*Hernandez Escalante v. Noem*, No. 1:25-cv-1799 (D. Md. June 25, 2025 .............10

*Hernandez Escalante v. Noem*, No. 9:25-cv-00182 (E.D. Texas)...........................11

*Khalil v. Joyce*, 777 F. Supp.3d 369 (D.N.J. 2025)................................................15

*Khalil v. President*, 164 F. 4th 259 (3d Cir. 2026) ................................................15

*Landis v. North American Co.*, 299 U.S. 248 (1936) ...............................................3

*Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025)..................................................5, 7

*Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) ......................................................15

*Ozturk v. Trump*, 779 F. Supp. 3d 462 (D. Vt. 2025) .......................... 12, 13, 14, 15

*Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 U.S. Dist. LEXIS 3877 (D. Md. Jan 9, 2026) .........................................................................................8

*Suri v. Trump*, 785 F. Supp. 128 (E.D. Va. 2025) ................................................11

*Suri v. Trump*, 2025 LEXIS 287836 (4th Cir. July 1, 2025) ............................ 11, 12

*Umanzor-Chavez v. Noem*, 2025 U.S. Dist. LEXIS 166231 (D. Md. Aug. 27, 2025)...........................................................................................8

*Zavvar v. Scott*, 2025 U.S. Dist. LEXIS 175897 (D. Md. Sept. 8, 2025).................8

**Other Authorities**

Evan Perez, *Justice Department Fires Immigration Lawyer Who Argued Case of Mistakenly Deported Man*, CNN (April 15, 2025, at 3:14 PM EDT), https://www.cnn.com/2025/04/15/politics/doj-fires-immigration-lawyer-who-argued-abrego-garcia-case-source-says ..................................................6

*Fired Justice Department Lawyer Accuses Agency of Planning to Defy Court Orders*, NPR (June 24, 2025 at 11:27 AM ET), https://www.npr.org/2025/06/24/g-s1-74316/justice-department-immigration-whistleblower ..................................................6

U.S. Dept. of Homeland Security, Imm & Customs Enf't, Online Detainee Location System (Dec. 2021), https://www.ice.gov/doclib/news/library/factsheets/pdf/odls-brochure.pdf. ..........9

U.S. Dept. of Homeland Security, Imm. & Customs Enf't, Online Detainee Locator System, https://locator.ice.gov/odls/#search ..................................................9

U.S. Dept. of Homeland Security, Imm. & Customs Enforcement, About the Detainee Locator/FAQs, https/locator.ice.gov/odls/#/about? (last visited May 6, 2026) ..................................................9

U.S. Dept. of Homeland Security, Imm. & Customs Enf't, Online Detainee Location System, locator.ice.gov ..................................................13

## IDENTITY AND INTEREST OF AMICI CURIAE

Lawyers Defending American Democracy (LDAD) and its Maryland chapter (MD-LDAD); The Society for the Rule of Law and Democracy, Inc., doing business as The Society for the Rule of Law (SRL); and former Judge J. Michael Luttig file this amicus brief in support of the appellees' brief urging affirmance of the decision of the court below dismissing the government's complaint.

LDAD is a non-profit, non-partisan organization devoted to encouraging the legal profession to enforce and uphold principles of democracy and the rule of law, consistent with our obligations as lawyers; demanding accountability from lawyers and public officials; and identifying attacks on legal norms and prescribing redress for them. LDAD has a significant interest in this case because the government's complaint and motion for preliminary injunction below undermine basic principles of American democracy and the rule of law.

SRL is a national non-profit, non-partisan membership organization of conservative, libertarian, and center-right lawyers, and others, who are dedicated to defending the legal principles of the rule of law, separation of powers, federalism, and democracy through government by the people.[1] SRL was originally founded as Checks & Balances in 2018 by lawyers and former jurists who served at the highest

---

[1] The views of SRL do not necessarily reflect the views of any individual member.

levels in previous Republican administrations. SRL relaunched in 2023 to defend and advance these principles, including each branch's importance as a check and balance on the other branches of the federal government.

Judge J. Michael Luttig is a former United States Court of Appeals Judge for the Fourth Circuit, whose jurisdiction includes the District of Maryland. As such, Judge Luttig has a particular interest in seeing that his former colleagues are not subjected to frivolous litigation by the U.S. Department of Justice and the Attorney General whose only purpose is to further harass, intimidate, and threaten the federal courts because they have, under the Constitution, ruled against the president and his administration.

Counsel for all parties have consented to the filing of this brief.

No party's counsel authored the brief in whole or in part. No party or a party's counsel contributed money that was intended to fund preparing or submitting this brief. No person – other than the amici curiae, their members, or their counsel – contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

The Standing Order is a modest exercise of the district court's inherent authority to manage its dockets and exercise its constitutional responsibilities. This authority is particularly important in habeas petitions and other cases challenging executive action, where separation-of-powers considerations are paramount. The

government's attempt to invalidate the Standing Order represents an assault on these considerations and the rule of law.

The nature of this assault is confirmed by the government's pattern of conduct in immigration cases over the last sixteen months. Through precipitous deportations and concealment of, or lack of transparency about, where it is confining detainees, the government seeks to prevent immigration-related habeas petitioners from accessing the United States District Court for the District of Maryland ("the District Court") and the District Court from adjudicating those habeas petitions. The Standing Order provides a brief window during which the District Court can inquire into the relevant facts, nothing more. Such inquiry is an essential element of the judiciary's constitutional role as a co-equal branch of government.

## ARGUMENT
### The District Court Properly Exercised Its Inherent Authority in Response to Governmental Conduct Likely to Deprive the Court of Jurisdiction

Courts have the inherent authority to issue administrative orders to manage their dockets. *See, e.g., Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Dietz v. Bouldin*, 579 U.S. 40, 45-47 (2016). This proposition would be unremarkable and uncontested in litigation between private parties. It is no less so when the government is a party. Such judicial authority in no way impinges on executive authority under Article II of the Constitution; rather, it is simply a recognition of the judicial authority of the courts as a co-equal branch of government

3

under Article III of the Constitution. The District Court here exercised that authority by adopting a Standing Order that effectively imposes a brief administrative stay prohibiting the government from removing any non-citizen habeas petitioner located in Maryland from the continental United States for two business days after the filing of the petition. The government's challenge to the Standing Order is premised on its purported right to preempt the District Court's jurisdiction by summarily deporting detainees or transporting them out of Maryland before the District Court even has time to determine whether it has jurisdiction, much less to consider the merits of the habeas petition.

The government's position in this case, and the underlying conduct that gave rise to the Standing Order, threaten the separation-of-powers and the rule of law by depriving detainees of access to the District Court and the District Court of its constitutional authority to adjudicate cases and controversies. In this brief, Amici focus on the government's conduct that created the need for the Standing Order: playing what amounts to a shell game to prevent the District Court from reviewing its actions.

**1. The Government's Precipitous Deportation of Kilmar Abrego Garcia.**

In the *Kilmar Abrego Garcia* case, which arose in the District Court, the Fourth Circuit addressed precisely this point. In a span of three days in March 2025, Immigration and Customs Enforcement (ICE) arrested Abrego Garcia in Maryland,

4

held him in a field office in Baltimore, transported him to a detention center in Louisiana, then to a detention center in Texas, and, ultimately, to a notorious supermax prison, known for widespread human rights violations, in El Salvador. *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 508-09 (D. Md. 2025). ICE took these actions despite an Immigration Judge's 2019 Order withholding Abrego Garcia's removal to El Salvador—and without notice, process, or a hearing. *Id*. Indeed, by the time Abrego Garcia's wife and mother retained an attorney to file a habeas petition in the District Court, he had already been imprisoned in El Salvador for nine days. *Id*. at 510. The District Court ordered the government to "facilitate and effectuate" the return of Abrego Garcia to the U.S.[2]

This Court rejected the government's emergency request for a stay pending appeal of the District Court's order that the government "take all available steps to facilitate" Abrego Garcia's return from El Salvador as soon as possible. Writing for a unanimous panel, Judge Wilkinson characterized Abrego Garcia's deportation as an "abrogation of habeas corpus through the transfer of custody to foreign detention

---

[2] *Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 U.S. Dist. LEXIS 68129, at *4 (D. Md. Apr. 4, 2025); 777 F. Supp. 3d at 519 & n.20; *aff'd in part, rem'd in part, Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (affirming "facilitate," remanding for clarification of "effectuate"); *on rem'd, Abrego Garcia v. Noem*, 8:25-cv-00951-PX, 2025 U.S. Dist. LEXIS 70951 (D. Md. Apr. 10, 2025) ("take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible").

centers." *Garcia v. Noem*, No. 25-1404, 2025 LEXIS 202536, at *8-*9 (4th Cir. Apr. 17, 2025). The government was "asserting the right to stash away residents of this country in foreign prisons without the semblance of due process that is the foundation of our constitutional order." *Id.*, at *2. Further, "[t]his should be shocking not only to judges, but to the intuitive sense of liberty that Americans far from courthouses still hold dear." *Id.* The government's position "would reduce the rule of law to lawlessness and tarnish the very values for which Americans of diverse views and persuasions have always stood." *Id.* at *4. Finally, Judge Wilkinson warned that such clashes between the Executive and the Judiciary would leave both weaker, stating: "The Judiciary will lose much from the constant intimations of its illegitimacy, to which by dent of custom and detachment we can only sparingly reply. The Executive will lose much from a public perception of its lawlessness and all of its attendant contagions." *Id.* at *8.

Although the government had admitted in the District Court that Abrego Garcia was erroneously deported,[3] and the Supreme Court had ordered that the

---

[3] The government subsequently fired the attorney who made that admission, and a top presidential advisor asserted that the attorney incorrectly admitted error. *See* Carrie Johnson, *Fired Justice Department Lawyer Accuses Agency of Planning to Defy Court Orders*, NPR (June 24, 2025 at 11:27 AM ET), https://www.npr.org/2025/06/24/g-s1-74316/justice-department-immigration-whistleblower; Evan Perez, *Justice Department Fires Immigration Lawyer Who Argued Case of Mistakenly Deported Man*, CNN (April 15, 2025, at 3:14 PM EDT), https://www.cnn.com/2025/04/15/politics/doj-fires-immigration-lawyer-who-argued-abrego-garcia-case-source-says.

government facilitate Abrego Garcia's return, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018-20 (2025), the government failed to do so for two months until after it had secured a Tennessee grand jury's indictment of Abrego Garcia. *Abrego Garcia v. Noem*, 811 F. Supp. 3d 741, 749 (D. Md. 2025). Following his release on bail in Tennessee, and his return to Maryland, ICE once again detained Abrego Garcia on August 25, 2025, stating its intent to deport him to a third country (*i.e.*, a country other than El Salvador). *Id.* at 750.

Abrego Garcia immediately filed another habeas petition. The District Court entered the Standing Order and subsequently extended it and required ICE to keep Abrego Garcia within 200 miles of the District Court pending the resolution of his habeas petition. *Abrego Garcia v. Noem*, No. 8:25-cv-02780, ECF Nos. 5, 20. Prolonged litigation ensued and continues, as the government has attempted to deport Abrego Garcia to a series of African countries, without success. 811 F. Supp. 3d at 750-54. The government has also declined to deport Abrego Garcia to Costa Rica, the country to which he requested to be removed, despite Costa Rica's repeated assurances that it would accept Abrego Garcia as a refugee or legal resident. *Id.* On December 11, 2025, after nearly four months' detention, the District Court ordered Abrego Garcia's release, subject to supervision, and prohibited his removal from the

continental United States unless and until issuance of a final order of removal to a third country. *Id.* at 764.[4]

> **2. The Government's Transportation of Maryland Habeas Petitioners to ICE Detention Facilities Nationwide Makes it Difficult or Impossible For Their Attorneys to Know Whether Their Clients Have Been Taken Elsewhere.**

The government argues that the Standing Order "incentivized aliens to allege they were in Maryland, and invited opportunistic litigators to file 'on behalf of' an alien, even though they may not know the alien's location at the time of filing." Brief of Appellant United States at 14 (hereinafter "Gov. Br."). On the contrary, ICE regularly removes aliens from Maryland (JA at 57), often—as discussed below – without notice.

Gaps and deficiencies in ICE's policies and procedures frustrate attorneys' best efforts to locate their client-detainees. Although ICE maintains an Online Detainee Locator System (ODLS), some detainees "may not be entered into the

---

[4] Several of the Standing Order cases cited in the government's opening brief also involved premature attempts to detain individuals for removal to third countries when "months of sensitive diplomacy" had barely begun: *Zavvar v. Scott*, No. 25-2104-TDC, 2025 U.S. Dist. LEXIS 175897, at *22-*29 (D. Md. Sept. 8, 2025); *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 U.S. Dist. LEXIS 3877, at *33 (D. Md. Jan. 9, 2026); *Cruz-Medina v. Noem*, 794 F. Supp. 3d 365, 371 (D. Md. 2025); *Cruz-Medina v. Noem*, 806 F. Supp. 3d 536 (D. Md. 2025); *Cruiz-Medina v. Noem*, No 25-cv-1768-ABA, 2025 U.S. LEXIS 222164 at *6 (D. Md. Nov. 12, 2025); *Umanzor-Chavez v. Noem*, No. SAG-25-01634, U.S. Dist. LEXIS 166231, at *11 (D. Md. Aug. 27, 2025).

ODLS immediately after they are detained, depending on processing and upload time,"[5] and some detainees in custody less than 48 hours may not even be in the system. U.S. Dept. of Homeland Security, Imm. & Customs Enf't, Online Detainee Locator System, https://locator.ice.gov/odls/#search (last visited May 6, 2026). Further, ICE's ODLS website cautions that "ODLS does not provide information about transfers that are planned or in progress. Once a person is transferred and booked into another ICE detention facility, ODLS will be updated with that information." U.S. Dept. of Homeland Security, Imm. & Customs Enforcement, About the Detainee Locator/FAQs, https/locator.ice.gov/odls/#/about? (last visited May 6, 2026). Thus, the ODLS may show that a detainee is located in Maryland even though the detainee may already be en route to another state – or country. Moreover, ODLS "does not reveal whether a person was removed [from the United States];" the system "will only reveal information if a person is currently in ICE custody." *Id.* And as for how current that information is, the website states that it "may be anywhere from 20 minutes to eight hours old." *Id.*

Therefore, as demonstrated in the cases discussed below, it can be difficult if not impossible for attorneys to obtain accurate—or any—information about a detainee's location on a timely basis. As a result, attorneys, despite all due diligence,

---

[5] U.S. Dept. of Homeland Security, Imm & Customs Enf't, Online Detainee Location System (Dec. 2021), https://www.ice.gov/doclib/news/library/factsheets/pdf/odls-brochure.pdf.

may sometimes file a habeas petition in Maryland in good faith after the petitioner has been removed to another state.[6]

### i. The Hernandez Escalante Case

Precisely this happened in *Hernandez Escalante v. Noem*, No. 1:25-cv-1799 (D. Md. June 25, 2025). Characterizing the District Court's entry and extension of the Standing Order in that case as "remarkabl[e]," the government claims that the Order was entered "even though the petitioner had undisputedly already arrived at a detention facility in Texas the day *before* his lawyer filed a habeas petition alleging that he was detained in Maryland." Gov't Br. at 14-15.

The Government's description of *Hernandez Escalante* has the benefit of 20-20 hindsight. Hernandez Escalante's attorney did not know his client had been removed from Maryland when he filed the habeas petition. ICE arrested Hernandez Escalante on June 3 2025, and held him at its Baltimore holding facility until 3:00 p.m. on June 5, 2025. ICE then began to transport him to ICE's detention facility in Livingston, Texas, where he arrived at 9:00 p.m. local time. The district court for the Eastern District of Texas, to which the District Court transferred the case (*Hernandez Escalante v. Noem*, ECF Doc. No. 18 (D. Md. June 25, 2025)), found that when Hernandez Escalanate's attorney filed the habeas petition in Maryland at

---

[6] As discussed in sections ii and iii, below, filing a habeas petition in a district from which the petitioner has already been removed at the time of filing does not necessarily deprive the district in which the petition was filed of jurisdiction.

2:25 a.m. on June 6, 2025, the attorney had no reason to know that Hernandez Escalante was then in Texas. *Hernandez Escalante v. Noem*, No. 9:25-cv-00182 (E.D. Texas) (ECF Doc. 31 at 3).[7]

### ii. The Badar Khan Suri Case

Badar Khan Suri, an Indian national, was in the United States on an exchange visa to study at Georgetown University. ICE arrested him outside his apartment in Rosslyn, Virginia, on March 17, 2025, and he was promptly transported to a detention center in Texas. *Suri v. Trump*, 785 F. Supp. 128, 133 (E.D. Va. 2025). The district court for the Eastern District of Virginia ordered ICE to release Suri from detention in Texas on his personal recognizance and return him to Virginia pending disposition of his habeas petition. *Id.* at 149. The government appealed to this Court, requesting that the district court's order be stayed pending appeal.

This Court rejected the stay request. *Suri v. Trump*, 2025 LEXIS 287836 at *26-27 (4th Cir. July 1, 2025).[8] In so doing, the Court noted that the ODLS did not

---

[7] The Texas court ultimately granted the habeas petition on the merits. *Hernandez Escalante v. Noem*, No. 9:25-cv-00182 (E.D. Texas 2025) (ECF Doc. 31 at 9-14) (magistrate's report and recommendation); *Escalante v. Noem*, 9:25-cv-00182-MJT, 2025 U.S. Dist. LEXIS 148899, *11 (E.D. Tex. 2025) (district court's affirmance). The government appealed to the Fifth Circuit (Docket No. 25-40639, Oct. 6, 2025), and the Fifth Circuit dismissed the appeal on April 22, 2026, at the government's request. *Escalante v. Noem*, 2026 U.S. App. LEXIS 11507 (5th Cir. Apr. 22, 2026).

[8] Oral argument on the merits of Suri's habeas petition was held on March 17, 2026.

show Suri's location in Texas until the day after his habeas petition was filed in Virginia. *Id*. at 13. The court opined that the government's "apparent goal in moving [Suri] was to make it difficult for his counsel to file the [habeas] petition and to transfer him to the Government's chosen forum." *Id*. at *24-25. Based on the principle that an equitable remedy should not be given if the moving party has not acted equitably, the majority concluded "that is the situation here." *Id*. at 25. But for the district court's decision, this Court opined, the government's "deliberate choice would have deprived the petitioner of any meaningful opportunity to contest his detention prior to removal to a distant jurisdiction." *Id*. at *26. Permitting the government to "undermine habeas jurisdiction by moving detainees without notice or accountability reduces the writ of habeas corpus to a game of jurisdictional hide-and-seek." *Id*. at *26.[9]

### iii. The Rumeysa Ozturk Case

Rumeysa Ozturk, a Turkish national, was a student at Tufts University when her student visa was revoked on March 21, 2025. Ozturk v. Trump, 779 F. Supp. 3d 462 (D. Vt. 2025). ICE arrested her near her residence in Somerville, Massachusetts at 5:25 p.m. on March 25, 2025; took her to Methuen, Massachusetts, arriving at

---

[9] In dissent, Judge Wilkinson conceded that "Mr. Suri has significant equitable factors in his favor." *Id*. at *32. He dissented, however, based primarily on the potential for duplicative litigation occurring simultaneously before an immigration court and a federal district court, noting that "[d]irect appeals are often thought a more desirable route to justice than collateral attacks." *Id*. at *31.

6:22 p.m.; then departed with her to Lebanon, New Hampshire. From there, at 9:03 pm, ICE began transporting her to an ICE facility in St. Albans, Vermont. *Id.* At 10:02 p.m.— while Ozturk was en route to St. Albans— Ozturk's attorney, who had unsuccessfully attempted to locate and speak with her, filed a habeas petition in the District of Massachusetts, which subsequently transferred the case to the District of Vermont. *Ozturk v. Trump*, 779 F. Supp. 3d 462, 470, 474 (D. Vt. 2025). At 10:55 p.m., the Massachusetts court (not knowing Ozturk was already in Vermont) had ordered that Ozturk not be moved outside Massachusetts without advance notice. Id. at 496. The Massachusetts court had stated that "[i]n order to give the court an opportunity to consider whether it has subject-matter jurisdiction, and if so to determine the validity of the habeas petition, the court may order [the] respondent to preserve the status quo." *Id.* at 472. The next morning, March 26, 2025, ICE transported Ozturk to an airport in Burlington, Vermont. From there she was placed on a plane to Alexandria, Louisiana. After landing there at 2:35 p.m., Ozturk was transported by ICE to the South Louisiana Correctional Facility. *Id.*[10]

Ozturk's attorney had checked ICE's ODLS (locator.ice.gov) several times between the evening she was first detained and the next afternoon, to no avail. *Id*. Ozturk's attorney's inquiries to ICE's Enforcement and Removal Operations

---

[10] The government opposed jurisdiction in either Massachusetts or Vermont based on her being in custody in Louisiana.

division in Burlington, Massachusetts, and Homeland Security's Investigations unit in Boston, Massachusetts, about Ozturk's location went unanswered. *Id*. That same day, a representative of the Turkish consulate went in person to ICE's offices in Burlington, Massachusetts to inquire about her whereabouts, but was told that ICE had no responsive information. *Id*. Later that same day, Ozturk's attorney called the Chief of Defensive Litigation in the Civil Division at the United States Attorney's Office in the District of Massachusetts and emailed an Assistant U.S. Attorney (AUSA) in that office to ask about Ozturk's location (and to inform them that Ozturk did not have the asthma medication she needed with her when she was detained). Both responded they did not know where she was. *Id*. Ozturk's attorney emailed them again that afternoon and was told they were still attempting to obtain information about Ozturk's location. *Id*.

Faced with the government's failure to tell her where it was holding her client, Ozturk's attorney filed an emergency motion with the district court to order the government to disclose Ozturk's location and allow her to speak with her attorney. The motion noted that the attorney had just been informed by a U.S. Senator that Ozturk was in Louisiana, but had not received confirmation from ICE or the government's counsel. *Id.* At 3:27 p.m. on the day after Ozturk was first detained, the AUSA informed Ozturk's attorney that she had been transferred to Louisiana that morning and was en route to a detention facility. After several emails were

exchanged between the AUSA and Ozturk's attorney, Ozturk finally was able to speak with her attorney at 9:45 p.m.—more than 24 hours after she had first been detained. *Id.* at 472-73. By that time, she was over 1,500 miles away from her residence. The district court ordered that Ozturk be transferred back to Vermont.[11] *Id.* at 498.

The government appealed to the Second Circuit, asking for an emergency stay of the transfer order pending appeal. The Second Circuit rejected the stay request, ruling that "any confusion about where habeas jurisdiction resides arises from the government's conduct during the twenty-four hours following Ozturk's arrest." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025).[12]

*     *     *

---

[11] The same pattern of conduct by ICE is seen in *Khalil v. Joyce*, 777 F. Supp. 3d 369, 372-73 (D.N.J. 2025). On appeal, the Third Circuit held that habeas jurisdiction was proper in D.N.J. despite the petition having originally been filed in the Southern District of New York while the petitioner was in custody in New Jersey, and despite the petitioner's subsequent transfer to Louisiana, *Khalil v. President*, 164 F. 4th 259, 265 (3d Cir. 2026), but (unlike the Second and Fourth Circuits in *Ozturk* and *Suri*, respectively, *see fns*. 8 and 12) held that the Immigration and Nationality Act stripped the district court of subject-matter jurisdiction to adjudicate the merits of the habeas petition because the Act "channels [j]udicial review of all questions of law . . . arising from any action taken or proceeding brought to remove an alien from the United States into a single petition for review [of an immigration judge and the Board of Immigration Appeals' decisions] filed with a federal court of appeals." *Id.*

[12] The Second Circuit denied rehearing and rehearing *en banc*. *Ozturk v. Hyde*, 155 F. 4th 187 (2d Cir. 2025). Following briefing on the merits of the habeas petition, the government filed an unopposed motion to dismiss its appeal on April 17, 2026, after Ozturk prevailed before an Immigration Judge.

The cases discussed above illustrate that the government has precipitously deported or attempted to deport detainees, or transferred them to locations far from where they were arrested and originally detained. In the face of this pattern of conduct intended to avoid judicial scrutiny, the District Court's Standing Order represents a modest step to preserve its constitutional authority to determine whether it has jurisdiction to hear a challenge to executive action through a habeas petition.

## CONCLUSION

The judgment below should be affirmed.

Respectfully submitted,

*/s/ H. Mark Stichel*
H. Mark Stichel
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
(443) 379-8981
hmstichel@rkwlawgroup.com

*/s/ M. Natalie McSherry*
M. Natalie McSherry
750 E. Pratt St., Suite 1100
Baltimore, MD 21202
(410) 752-6030
nmcsherry@kg-law.com

*Counsel for Amici Curiae*

16

**CERTIFICATE OF COMPLIANCE**

1.      This brief contains 4859 words, excluding the parts of the brief exempted from the word count by Rule Fed. R. App. P 32.

2.      This brief complies with the font, spacing, and type size requirements stated in Fed. R. App. P. 32.

/s/H. Mark Stichel
H. Mark Stichel

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically filed this amicus brief with the Court of Appeals for the Fourth Circuit using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/H. Mark Stichel
H. Mark Stichel

**ADDENDUM**

# ADDENDUM

*Abrego Garcia v. Noem, et al.* 8:25-cv-2780 ECF 5 (D. Md.) ............... SA1

*Abrego Garcia v. Noem, et al. 8:*25-cv-2780 ECF 20 (D. Md.) ............. SA2

*Hernandez Escalante v. Noem, et al.* 1:25-cv-1799 ECF 18 (D. Md).... SA3

*Hernandez Escalante v. Noem, et al.* 9:25-cv-182 ECF 31 47 E.D. Tex

.................................................................................................. SA5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>IN RE:</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>PETITIONS FOR WRITS OF</td><td>*</td><td>MISC. NO. 00–308</td></tr>
<tr><td>HABEAS CORPUS – ALIEN DETAINEE</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*******

## AMENDED STANDING ORDER 2025–01

The All Writs Act permits courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Further, the Supreme Court recognizes "a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *F.T.C. v. Dean Foods Co.*, 384 U.S. 597,604 (1966) (citing cases). The recent influx of habeas petitions concerning alien detainees purportedly subject to improper and imminent removal from the United States that have been filed after normal court hours and on weekends and holidays has created scheduling difficulties and resulted in hurried and frustrating hearings in that obtaining clear and concrete information about the location and status of the petitioners is elusive. Accordingly, in order to preserve existing conditions and the potential jurisdiction of this Court over pending matters while the Court determines the scope of its authority to grant the requested relief; to ensure Petitioners are able to participate in the adjudication of their requests for habeas relief, including participation in court proceedings and access to legal counsel for such purposes; to ensure the Court is able to evaluate their respective claims for relief based on their in–court testimony that may be offered; and to ensure the Government has a fulsome opportunity to brief and present arguments in its defense, it is hereby

ORDERED by the United States District Court for the District of Maryland that after the filing of (1) a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on behalf of an alien detainee located in the District of Maryland, and (2) the Petitioner's full name and A#, either in the Petition or in a separate sealed filing, the Clerk is directed to docket this Order in the case and simultaneously send a copy of this Order, the Petition, and the Petitioner's full name and A# to the Chief and Deputy Chief of the Civil Division of the United States Attorney's Office for the District of Maryland, and then file a Notice that the documents have been transmitted; and it is further

ORDERED that effective upon the filing of the notice that these documents have been transmitted to the Chief and Deputy Chief of the Civil Division, Government/Respondents, including all those acting for them or on their behalf, are ENJOINED and RESTRAINED from removing Petitioners from the continental United States or altering their legal status. This Order shall remain in effect until 4:00 p.m. on the second business day after the filing of the notice, unless the terms of this Order are further extended by the presiding judge; and it is further

ORDERED that Government/Respondents shall notify appropriate officials of this Order promptly and provide all necessary information and documents to effectuate compliance with this Order.

Date: <u>May 28, 2025</u>　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　George L. Russell III, Chief Judge
　　　　　　　　　　　　　　　　　　　United States District Court

SA01



# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

6500 CHERRYWOOD LANE
GREENBELT, MD 20770

August 27, 2025

Re:  25-cv-2780, *Abrego Garcia v. Noem, et al.*

## LETTER ORDER

Dear Parties:

For the reasons discussed during today's recorded scheduling conference, the Court sets the following schedule:

| | |
|---|---|
| **September 22, 2025** | Respondents' response to the habeas petition is due. |
| **September 29, 2025** | Petitioner's reply is due. |
| **October 2, 2025** **5:00 PM** | Parties shall submit witness lists to the Court. |
| **October 6, 2025** **10:00 AM** | Evidentiary Hearing Courtroom 2C, United States District Court, Greenbelt, Maryland. |

Respondents have represented that Petitioner will not be removed from the continental United States prior to the October 6, 2025 hearing. Nonetheless, Respondents are **ENJOINED** until further order of the Court from removing Petitioner from the continental United States, and must ensure that Petitioner remains detained within 200 miles of the Greenbelt, Maryland courthouse to preserve his access to both criminal and habeas counsel.

Although informal, this correspondence constitutes an Order of the Court and shall be docketed as such.

Sincerely,

Paula Xinis
United States District Judge

SA02

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARIO HERNANDEZ ESCALANTE, | * | |
| Petitioner, | * | |
| | | Civil Action No. 1:25-cv-01799-PX |
| v. | * | |
| | * | |
| KRISTI NOEM, Secretary, | * | |
| United States Department | * | |
| of Homeland Security, *et al.*, | * | |
| Respondents. | | |
| | * | |
| | *** | |

**ORDER**

Mario Hernandez Escalante ("Hernandez") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"), challenging his ongoing detention by U.S. Immigration and Customs Enforcement ("ICE") and seeks immediate release from confinement. ECF No. 1. In 2019, Hernandez had been granted deferral of removal to his native country of El Salvador. ECF No. 1 ¶ 19. Since then, Hernandez has been living in Maryland and under the supervision of ICE. ECF No. 1-2.

On June 2, 2025, ICE instructed Hernandez to report to the ICE Baltimore Field Office the next day. ECF No. 11 at 3. When Hernandez arrived, he was immediately detained and informed that his release had been revoked because Respondents now sought to deport him to a country other than El Salvador. *Id*.

On the afternoon of June 5, 2025, ICE transferred Hernandez from custody in Baltimore to an ICE detention facility in Livingston, Texas ("IAH"). ECF No. 4-2. Hernandez, through counsel, did not file his habeas petition until several hours later, on June 6, 2025, at 2:25 AM. ECF No. 1. Hernandez has consistently remained in custody at IAH since his transfer.

1

SA03

It is undisputed when Hernandez filed his habeas Petition in this Court, he was detained in IAH.  Thus, pursuant to the "immediate custodian" rule, the Court lacks the power to adjudicate the Petition.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004).  Because the "proper respondent" to the Petition is the warden of the facility where Hernandez is confined at the time of filing, the Petition may be heard only in the district of confinement.  *Id.*; s*ee also Trump v. J. G. G.*, 145 S. Ct. 1003, 1005 (2025); *cf. United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008).

Hernandez has offered the Court no convincing basis to depart from the immediate custodian rule, and after careful review, the Court finds none.  Thus, Hernandez can pursue his Petition only in the United States District Court for the Eastern District of Texas.  The parties further agree that if the Court concludes the Petition must proceed in the Eastern District of Texas, the Court shall transfer the case in lieu of dismissal.

Accordingly, it is this 25th day of June, 2025, by the United States District Court for the District of Maryland, ORDERED that:

1.  The Temporary Restraining Order at ECF No. 9 is TERMINATED;

2.  The Respondents Motion at ECF No. 4 is GRANTED;

3.  In lieu of dismissing the Petition, the Clerk is DIRECTED to TRANSFER the case to the United States District Court for the Eastern District of Texas;

4.  The Clerk SHALL TRANSMIT a copy of this Order to the parties; and

5.  CLOSE this case.

June 25, 2025                                                      /s/
Date                                                      Paula Xinis
                                                      United States District Judge

2

SA04

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| MARIO HERNANDEZ ESCALANTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  9:25-CV-00182-MJT |
| | § | |
| KRISTI NOEM, TODD M. LYONS, NIKITA BAKER, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Petitioner, Mario Hernandez Escalante, is currently detained by Immigration and Customs Enforcement (ICE) at IAH, an ICE adult detention holding facility located in Livingston, Texas. A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is currently on file in this district challenging this detention. The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

## BACKGROUND

Petitioner is a native of El Salvador.  On August 10, 2018, he was apprehended by ICE and a prior order of removal was reinstated prompting him to claim a fear of returning to El Salvador. He was ordered removed from the United States in 2019 but was then granted protection on December 12, 2019, from that removal under the U.N. Convention Against Torture ("CAT").  (Doc. #1-2.)  A "Decision to Continue Detention" was signed on January 16, 2020, stating that he was a risk of flight and danger to the community based upon his criminal history of illegal reentries, assault, and DUI.  (Doc. #14-3.)  On February 14, 2020, he was released from detention and placed

1

SA05

on supervised release with ICE.  (Doc. #26.)  Petitioner contends that his 90-day removal period began on December 12, 2019, and ended on March 11, 2020.  While on release in Maryland, the Petitioner got married and had two children.

Despite his alleged compliance with his terms of supervision, on June 3, 2025, ICE arrested the Petitioner when he arrived to report to his supervision officer for a scheduled check-in.  He was originally detained in Baltimore, Maryland.  The warrant and warning dated June 3, 2025, states that Petitioner is subject to removal under section 212 of the Immigration and Nationality Act for having been convicted of a crime designated as an aggravated felony.  (Docs. #14-1, #14-2.)  Respondent's briefing indicates that Petitioner has two convictions for driving under the influence, a felony simple assault on an officer, and illegal reentry all committed prior to his 2019 CAT Withholding Order and release on supervision.  (Doc. #10, at 4.)  Since the CAT Order, Petitioner was convicted again of driving under the influence on February 17, 2022, and for violating his probation in Virginia on March 24, 2022, for which he served two years and six months.  (*Id.*)  During his supervision this year, the Petitioner was placed on an ankle monitoring device presumably due to his most recent convictions.  (Doc. #6.)

Respondents produced as an exhibit to their response a "Notice of Revocation of Release" that was given to the Petitioner and dated June 3, 2025, but it contained typographical errors.  (Doc. #12-1.)  It stated that his release was being revoked because there were "changed circumstances" and it stated that he was previously ordered to be removed to any country other Honduras and his case was under review by El Salvador for issuance of travel documents.  (*Id.)*  Petitioner was actually ordered to be removed to any other country other than El Salvador—not Honduras, and his case was under review by Mexico—not El Salvador, as stated in subsequent corrected notices. The date of removal listed was also incorrect.

On June 5, 2025, at 3:15 p.m., ICE transferred the Petitioner from ICE custody in Baltimore to the ICE facility in Livingston, Texas, arriving at 9:00 p.m.  (Doc. #4-1.)  Not knowing this information, his counsel filed his habeas petition in the District of Maryland at 2:25 a.m. on June 6, 2025.  (*Id.*)  On June 10, 2025, the Maryland court issued a briefing order directing the Respondent to file a Response to the Petitioner with relevant records, and Petitioner was to file a Response to the Respondent's Motion to Dismiss for Lack of Jurisdiction, both due on June 16, 2025.  (Doc. #9.)  The court also held a hearing on these matters, as well as the merits of the Petitioner's detention, on June 23, 2025.[1]  (Doc. #16.)

On June 16, 2025, Petitioner was served with an updated Notice of Revocation of Release again stating that there were "changed circumstances" in his case and he can be expeditiously removed to Mexico. (Doc. #15-1.)  The notice contains no allegation that Petitioner violated a condition of supervision.  It also states that his case is under current review by Mexico for issuance of a travel document.  (*Id.*)  This notice further states that he is in custody pursuant to 8 C.F.R. 241.4/8 C.F.R. 241.13 and will be afforded an informal interview and given opportunity to respond to the reasons for revocation with evidence.  (*Id.*)  If not released, it states that he will receive a new review within three months of the date of this notice.  (*Id.*)

On June 18, 2025, Petitioner was served with a Notice of Removal indicating that U.S. Immigration and Customs Enforcement intends to remove him to Mexico.  (Doc. #15-2.)  This notice states that it was read to the Petitioner in English.[2]  On June 25, 2025, the District of Maryland transferred jurisdiction of this case to this district, the Eastern District of Texas.  (Doc.

---

[1] Because the parties agreed to argue the merits of the case in Maryland, this court listened to the audio of that hearing but did not hold another evidentiary hearing.  This court did, however, request that the parties provide a status update to the court.  (Doc. #24.)  The Petitioner filed an update.  (Doc. #29.)  The Respondents did not.

[2] The Petitioner's sister filed an affidavit with the court stating that the Petitioner does not speak English.  (Doc. #6.)

SA07

#18.); *Hooker v. Sivley*, 187 F.3d 680, 682 (5th Cir. 1999) (finding a § 2241 petition must be filed in the district where the petitioner is incarcerated.).

## DVD CLASS ACTION

In *DVD*, the court granted a nationwide class action regarding the notice procedures that should be given to non-citizens who have a final order of removal issued under the INA and whom DHS has deported or will deport on or after February 18, 2025, to a country not previously designated as the country or alternative country of removal or not identified in writing in the prior proceedings as a country to which the individual would be removed. *DVD v. DHS*, No. 25-10676, 2025 WL 1142968, *11 (D. Mass. April 18, 2025).

Respondents assert that the instant case should be dismissed because Petitioner is a member of the non-opt out class action in *DVD* or, in the alternative, the court should at least stay this case pending resolution of the *DVD* case. (Doc. #10, at 8-10.) Respondents also state that Petitioner is seeking the same relief as the class members. (*Id.*) However, *DVD* was not filed as a section 2241 habeas case requesting release by the non-citizens. *DVD,* 2025 WL 1142968, *1. Instead, that class action only seeks declaratory and injunction relief to establish notice procedures for the class members. *Id.* The request for a structured notice plan is based upon the President's January 20, 2025 Executive Order, DHS's February 18, 2025 Directive , and DHS's March 30, 2025 Guidance, which dictate third country removal without notice or an individualized inquiry if the United States has received assurances from that country that aliens removed there will not be persecuted or tortured. *Id.* at *3-4.

Here, however, the parties have not pointed the court to the Executive Order, Directive or Guidance as a basis for Petitioner's removal. Further, Respondents have given Petitioner notice of the third country to which it seeks to remove him to, albeit not one that he is amenable to, and

have presumably instituted revocation proceedings pursuant to the regulations. Finally, the Petitioner here seeks release from detainment, a relief not addressed in the *DVD* class action. S*ee E.D.Q.C. v. Warden, Stewart Det. Ctr.,* No. 4:25-CV-50-CDL-AGH, 2025 WL 1575609, at \*5 (M.D. Ga. June 3, 2025) (While there is some overlap of the legal issues involved, *D.V.D.* is not a habeas action and release from custody is not one of the remedies requested . . . In contrast, Petitioner's habeas petition is—at its core—a request for relief from prolonged post-final order of removal detention pursuant to *Zadvydas*). Consequently, the undersigned recommends denying Respondent's request for dismissal and stay of the case pending resolution of *DVD* and will now address the merits of this case as it applies only to the Petitioner's request for release from detainment.

## JURISDICTION

As an initial matter, the Respondents argue that this court lacks subject matter jurisdiction to handle this case according to statutes under the Immigration and Nationality Act. (Doc. #10.) Specifically, they cite 8 U.S.C. § 1252(g), which bars court review of decisions by ICE to execute removal orders. Section 1252(g) of the Illegal Immigration Reform and Immigration Responsibility Act states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The United States Supreme Court has specifically rejected the idea that section 1252(g) strips federal courts of jurisdiction over habeas challenges to present immigration confinement. *Zadvydas v. Davis,* 533 U.S. 678 (2001). The Court held that 28 U.S.C. § 2241 confers jurisdiction to challenge detention that is without statutory authority, as well as

5

SA09

constitutional challenges to post-removal-period detention.. *Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001); *see also Virani v. Huron,* No. SA-19-CV-00499-ESC, 2020 WL 1333172, at *1 (W.D. Tex. Mar. 23, 2020) ("Federal courts have jurisdiction, however, to adjudicate claims challenging the constitutionality of an alien's continued detention.") (citing *Gul v. Rozos*, 163 F. App'x 317, 2006 WL 140540, at *1 (5th Cir. 2006)).

It is not disputed that this court does not have jurisdiction over the Petitioner's actual removal proceedings. Here, however, the Petitioner is not asking this court to prevent his removal to a third country, but instead to release him from detention and put him back on supervised release pending resolution by the immigration court as to what third country he can be removed to without persecution or torture. Petitioner also alleges that the procedures for revoking his release were not properly followed and cites to *Cordon-Salguero v. Noem*, where the court found that the Respondents failed to follow the regulations in revoking the petitioner's immigration supervised release and therefore its actions were unlawful according to the *Accardi* doctrine. No. 1:25-CV-1799, ECF 17-1, at 11 (D. Md. June 24, 2025).

In *Accardi v. Shaughnessy*, the Supreme Court considered a deportation case in which the Board of Immigration and the DOJ failed to follow their own established procedures and therefore effectively denied due process to the petitioner. 347 U.S. 260, 268 (1954). The Fifth Circuit has likewise recognized that an agency's violation of its regulations may support a procedural due process claim. *Ayala Chapa v. Bondi*, 132 F.4th 796, 799 (5th Cir. 2025) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Consequently, recognizing the court has jurisdiction, the court will turn to evaluation of the Petitioner's due process claim and his alleged resulting unlawful detention.

SA10

**DETENTION**

Respondents state in their response that Petitioner is being detained pursuant to 8 U.S.C. § 1231(a)(6), and also in accordance with the United States Supreme Court opinion in *Zadvydas* v. *Davis*, 533 U.S. 678 (2001), which holds that post-removal-period detention of six months is presumptively reasonable to allow the United States to effectuate removal. (Doc. #10, at 4.)  Thus, they allege, the Petitioner's detainment since June 3, 2025, is well within that time frame and his claim is premature at this time.  They also state there is a regulatory basis for detention under 8 C.F.R. §§ 241.4 and 241.13 due to revocation of his conditions of release.

Petitioner argues in response that the presumptive six-month period in *Zadvydas* has expired thereby shifting the burden to the Government to establish a "significant likelihood that the petitioner will be removed within the reasonably foreseeable future."  In addition, Petitioner argues that the regulations for detention due to revocation were not complied with, including improper notice by an improper authority and delay in affording him an interview to contest Mexico as a third country for removal.

1. <u>Authority to Revoke Release</u>

Petitioner argues several errors in the notices submitted by the Respondent.  The first notice dated June 3, 2025, contained several typographical errors (listing the incorrect countries and incorrect removal date) and was unsigned but had a signature block for Acting Field Office Director (FOD), Nakita Baker.  (Doc. #12-1.)  The second notice again had the incorrect removal date and was unsigned and had no certificate of service.  (Doc. #12-2.)  The third notice, dated June 16, 2025, has the correct information but was signed by a SDDO, Supervisory Detention and Deportation Officer.  (Doc. 15-1.)

SA11

Petitioner alleges that these notices appear to be *ultra vires*—done without the proper authority to revoke the Petitioner's release—because Vernon Liggins *may have been* Acting Field Office Director on June 3, 2025, instead of Nikita Baker.  (Doc. #14, at 6.)  Respondent alleges that ICE's Baltimore (A)FOD issued the written notice to Petitioner but does not specify that person's name.  (Doc. #10, at 16.)

An article dated March 28, 2025, indicates that Matthew Elliston stepped down as FOD to be promoted to deputy assistant director of field operations at ICE headquarters in Washington, and Nikita Baker stepped in as the Interim FOD until the position could be filled.  *See* https://www.thebaltimorebanner.com/community/local-news/ice-trump-maryland-new-field-director-cooperation-agreements-UZCWHPMOX5H37CBWDYZF6CDXCM/ (last visited July 9, 2025).  As of May 29, 2025, Nikita Baker was still acting FOD.  *See* https://www.wbal.com/ices-acting-maryland-director-emphasizes-public-safety-criticizes-local-policies (last visited July 9, 2025).  It appears that Vernon Liggins became the FOD sometime thereafter in June 2025 as indicated by the June 10, 2025, article cited by the Petitioner.  Because the court finds other grounds upon which to recommend to the district court that it grant the Petitioner's petition, the court will assume Nikita Baker was acting FOD and had the proper authority to sign the notices in this case.

2.  <u>Change in Circumstances and Significant Likelihood of Removal</u>

In *Zadvydas*, the Court held that section 1231(a)(6)[3] authorizes detention only for a period reasonably necessary to bring about the noncitizen's removal from the US, and six months of post-removal detention is considered "presumptively reasonable."  533 U.S. at 701.  The Court outlined

---

[3] Zadvydas was subject to removal due to aggravated felony convictions and a controlled substance conviction.  He was born in Germany at a displaced person camp.  After ordering his removal to Germany, Germany informed INS that he was not a German citizen and it would not accept him, and Lithuania likewise refused to accept him because he was neither a citizen nor a permanent resident of Lithuania.  *Zadvydas v. Davis*, 285 F.3d 398, 400 (5th Cir. 2002).

SA12

a process whereby the noncitizen bears the burden of proving unreasonableness of detention during the six-month window.  *Id.*  Thereafter, if there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the burden shifts to the Government to justify continued detention.  *Id.*  The Supreme Court remanded the case back to Fifth Circuit to apply this new standard.  *Id.*

On remand, the Fifth Circuit found that Zadvydas provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and that INS had not rebutted that showing, so the district court's judgment ordering that Zadvydas be released was affirmed.  *Zadvydas v. Davis*, 285 F.3d 398, 404 (5th Cir. 2002).  The court noted that the order of release "shall not of itself preclude the ***INS from seeking to return Zadvydas to INS custody*** (if that be otherwise shown to be appropriate) ***<u>upon a showing that</u>, on the basis of matters transpiring after the decision of the court, there has then become a substantial likelihood of removal in the reasonably foreseeable future"*** or INS seeks a modification of the conditions of his release based upon some material change.  *Id.* (emphasis added).

In our present case, we have a unique situation of "re-detainment" as contemplated by the Fifth Circuit when it released Zadvydas.  Petitioner has a final order of removal and received withholding of that removal based upon CAT protection over six years ago.  He was released in 2020 by INS on an order of supervised release pursuant to 8 C.F.R. § 241.13 because there was good reason to believe there was no significant likelihood of removal to another country in the reasonably foreseeable future.   Now, five years later, he has been "re-detained" due to "changed circumstances."[4]  (Docs. #10-1, #15-1.)  The only alleged circumstance is that "his case is under current review by Mexico for the issuance of a travel document."  (*Id.*)  In addition, Respondent

---

[4] The notices provided do not indicate that he has violated a condition of his supervised release.

SA13

provided as an exhibit a "Notice of Removal" dated June 18, 2025, indicating that ICE intends to remove Petitioner to Mexico. As indicated by the Fifth Circuit, upon return to custody, it is now up to INS to show that there is a substantial likelihood of removal to Mexico in the reasonably foreseeable future.

Moreover, 8 C.F.R. § 241.4(b)(4) states that after release under section 241.13, "***if the Service subsequently determines,*** because of a *change of circumstances*, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to  .. . a third county, the alien shall again be subject to the custody review procedures under this section." Subsection l of this regulation provides that upon revocation, the alien is afforded an "initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l). Thereafter, a records review is done, and an interview is scheduled "within approximately three months after release is revoked." *Id.* Section 241.13((i) entitled "Revocation of Release" also states that an alien's release may be revoked and he may be returned to custody on account of "changed circumstances" if there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.

Here, the notices given to the Petitioner state that reason for revocation is "changed circumstances" and removal to Mexico. The court disagrees with the Respondent's position that Petitioner's petition is premature because the six-month presumptive period of detainment starts anew upon revocation. *See Nguyen v. Hyde*, No. 25-cv-11470, 2025 WL 1725791 (D. Mass. June 20, 2025) (finding *Zadvydas* 6-month presumption not applicable where alien is "re-detained" after having been on supervised release and that respondents failed to meet their burden to show a substantial likelihood of removal is now reasonably forseeable); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D. N.J. June 13, 2025) (finding 6-month presumption had long lapsed while

SA14

petitioner was on supervised release and it is respondent's burden to show removal is now likely in the reasonably foreseeable future).  Therefore, the question is whether the Respondents have shown that that there is a substantial likelihood of removal to Mexico in the reasonably foreseeable future.  According to the above regulations and ICE's own notices citing to the same regulations, the burden is on the Respondents to make the required showing.  The next question is at what point can the court review ICE's determination of changed circumstances.

In *Hoac*, a California court denied a temporary restraining order to a Vietnam refugee who was on supervised release then re-detained due to "changed circumstances."  *Hoac v. Becerra,* No. 2:25-cv-1740, 2025 WL 1808697 (E.D. Cal. June 30, 2025).  The court held that it could not make the initial individualized factual finding that a "changed circumstance" had occurred because that would interfere with the Executive Branch's authority under the regulation.  *Id.* at *3 (citing *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)[5]).  "Instead, the court is only authorized to review ICE's initial determination of re-detainment in light of the factors set out in section 241.13(f)."  *Id.* Those factors include: 1) history of the alien's efforts to comply with removal order; 2) history of the Service's efforts to remove aliens to the country in question; 3) ongoing nature of the Service's efforts to remove this alien and the alien's assistance; 3) reasonably foreseeable results of those efforts; and 4) the views of the Department of State regarding the prospects for removal of aliens to the country in question.  8 C.F.R. § 241.13(f).

In *Nguyen v. Hyde*, the court considered a Petitioner's section 2241 request for release under similar circumstances.  2025 WL 1725791 (D. Mass. June 20, 2025).  Nguyen was ordered removed to Vietnam in 1992 but was placed on supervision due to the lack of a repatriation

---

[5] "The plain language of the regulation, however, does not allow a court in the first instance to make the required individualized finding. To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Kong*, 62 F.th at 620 (citing 8 C.F.R. § 241.13(f)).

11

SA15

agreement at the time between the United States and Vietnam. *Id. at \*1.* In 2020, the U.S. and Vietnam signed a Memorandum of Understanding to facilitate the return of Vietnam citizens. *Id.* at \*2. Five years later, in March 2025, Nguyen was detained by ICE, and the Respondents asserted a change in circumstances per the regulation and argued for his removal to Vietnam. *Id.* at \*3. The court cited to *Kong* and found that the question was ripe for court review because ICE had made a determination of changed circumstances—there was now a significant likelihood of removal to Vietnam. *Id.* The court held that respondents failed to meet their burden because of the five-year gap between the repatriation agreement and his detention; the lack of information presented that Nguyen is eligible under that memorandum; and the lack of concrete steps taken by ICE to process his travel documents failed to show a significant likelihood of removal. *Id.* at \*3-4. Thus, the court found Respondents failed to comply with its own regulations—8 C.F.R. § 241.13—so his detention was unlawful, and release was appropriate. *Id.* at \*5.

In *Liu v. Carter*, a district court in Kansas found that a noncitizen's re-detention was unlawful because officials failed to grant the petitioner the required interview under section 241.13 and there was no evidence of "changed circumstances" that could have led officials to determine that there was a significant likelihood that petitioner would be removed to China in the reasonably foreseeable future, as required by law to justify a revocation of release. *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at \*2 (D. Kan. June 17, 2025). The court noted that a bare assertion that an increase in removals to China as the necessary "changed circumstances," did not make petitioner's removal any more likely without addressing the particular obstacles to the many past failed attempts to remove him, namely the lack of proper documentation for petitioner. *Id.* at \*2-3.

In this case, Respondents have indicated that the changed circumstances are the Petitioner's removal to a third country, Mexico. Therefore, the court may review this determination per *Zadvydas*. Respondents allege in the Response that there is a significant likelihood of removal in the reasonably foreseeable future because there is an order of removal; ICE has issued an Updated Notice of Revocation of Release; and Petitioner's case is under current review by Mexico for the issuance of a travel document. (Doc. #10, at 12-13.) At the hearing on June 23, 2025, in Maryland, over the jurisdiction and merits of this case, counsel for the Respondents merely stated that the government is working on the process of removal with Mexico. No documents have been provided to the court regarding any communications with Mexico regarding the Petitioner's removal.

These conclusory statements (both in the Response and at the hearing) without evidence do not pass muster. "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Kane v. Mukasey*, No. CV B-08-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), *superseded by*, 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting), *R & R adopted*, 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008). In *Kane*, the court noted that "no clear guidance exists to aid courts in making the determination as to whether significant likelihood of removal in the reasonably foreseeable future exists. Ultimately, determining what the 'reasonably foreseeable future' really is, is a factual determination to be undertaken by the habeas court looking into the circumstance and detention length of each individual petitioner." *Id.*

In addition, the court ordered the parties in this case to file a status update by July 7, 2025. (Doc. #24.) The Respondents chose not to file a status report. Therefore, the court can only assume that is because they do not have any further information as to the Petitioner's potential removal to

13

Mexico. Consequently, the undersigned finds that the Respondents have not met their burden. There is no information, much less evidence, indicating ICE's efforts to remove aliens to Mexico as a third country or any concrete information regarding its efforts to remove the Petitioner to Mexico other than "documents are under review." There is no indication that Mexico is willing to accept Petitioner. Moreover, Petitioner has indicated that he has requested a "reasonable fear" interview objecting to Mexico as a viable third country for removal due to his brother's death there. As a result, the court finds there is not a significant likelihood of removal to Mexico in the reasonably foreseeable future.

## RECOMMENDATION

For the reasons discussed herein, this court recommends that the Petition for a writ of habeas corpus be GRANTED and Respondents should be ORDERED to release Petitioner upon the district court's order adopting this report and recommendation subject to an order of supervision in accordance with 8 C.F.R. § 241.5, including the continued use of an ankle monitoring device. The court further recommends that Respondent's Motion to Dismiss or Stay (doc #10) this case pending resolution of the *DVD* class action case be DENIED.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); Fed. R. Civ. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009);

14

SA18

FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 11th day of July, 2025.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

SA19