No. 25-2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES, *et al.*,

Plaintiffs-Appellants,

v.

JUDGE MATTHEW JAMES MADDOX, *et al.*,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Maryland

REPLY BRIEF FOR APPELLANTS

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant
  Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney
  General*

ELIZABETH HEDGES
SARAH WELCH
  *Counsel to the Assistant Attorney
  General*
  *Civil Division*

  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(771) 209-1978*
  *Elizabeth.T.Hedges@usdoj.gov*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

ARGUMENT.....................................................................................................3

    I.    This Challenge To Since-Rescinded Orders Is Moot, and
        *Munsingwear* Vacatur Is Warranted. .......................................3

    II.    The District Court Erred by Rejecting This Procedurally
        Proper Facial Challenge to a Court Rule....................................6

        A.    The government has an equitable cause of action to
            enjoin an unlawful court rule. ........................................6

        B.    Judicial immunity does not bar the claims against the
            judges and clerk. ........................................................... 14

        C.    The government has standing to seek injunctive
            relief. ............................................................................... 18

    III.    The Standing Orders Were Undisputedly Unlawful................. 21

CONCLUSION.................................................................................................24

CERTIFICATE OF COMPLIANCE..............................................................26

CERTIFICATE OF SERVICE.......................................................................27

i

# TABLE OF AUTHORITIES

**Cases**

*Akinro v. Blake,*
    2007 WL 3020186 (D. Md. June 8, 2007)...............................................17

*Akinro v. Blake,*
    235 F. App'x 75 (4th Cir. 2007)...............................................................17

*Alvarez v. Smith,*
    558 U.S. 87 (2009) ...................................................................................6

*Baylson v. Discip. Bd. of Sup. Ct. of Pa.,*
    764 F. Supp. 328 (E.D. Pa. 1991)........................................................... 12

*Brusznicki v. Prince George's Cnty.,*
    42 F.4th 413 (4th Cir. 2022)......................................................4, 5, 21, 22

*Butz v. Economou,*
    438 U.S. 478 (1978).................................................................................15

*Cabrera v. United States,*
    2021 WL 4311255 (S.D.N.Y. Sept. 21, 2021)...........................................17

*Carlton & Harris Chiro. Inc v. PDR Network, LLC,*
    982 F.3d 258 (4th Cir. 2020) ................................................................. 21

*Castendet-Lewis v. Sessions,*
    855 F.3d 253 (4th Cir. 2017) ................................................................... 3

*Chafin v. Chafin,*
    568 U.S. 165 (2013)........................................................................... 19, 20

*Davis v. United States,*
    564 U.S. 229 (2011)................................................................................ 19

*In re Debs,*
    158 U.S. 564 (1895) ................................................................................. 1

*Egbert v. Boule,*
    596 U.S. 482 (2022)............................................................................... 10

*Gessele v. Jack in the Box Inc.,*
  2026 WL 1075915 (9th Cir. Apr. 20, 2026)..............................................20

*Gibson v. Goldston,*
  85 F.4th 218 (4th Cir. 2023) ................................................................17

*Hall v. Beals,*
  396 U.S. 45 (1969)................................................................................22

*Hernandez v. Mesa,*
  589 U.S. 93 (2020)............................................................................... 10

*Majerska v. United States,*
  2021 WL 4739602 (D.N.J. Oct. 12, 2021) .............................................17

*Maryland Highways Contrs. Ass'n v. Maryland,*
  933 F.2d 1246 (4th Cir. 1991)............................................................ 4, 5

*Mireles v. Waco,*
  502 U.S. 9 (1991) .................................................................................17

*Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Roberts,*
  180 F. Supp. 3d 46 (D.D.C. 2015) ................................................. 8, 9, 12

*New York State Rifle & Pistol Ass'n v. City of New York,*
  590 U.S. 336 (2020)............................................................................ 3, 4

*Newsome v. Merz,*
  17 F. App'x 343 (6th Cir. 2001) ...........................................................17

*Nixon v. Fitzgerald,*
  457 U.S. 731 (1982) ............................................................................ 19

*Platt v. Mansfield,*
  162 F.4th 430 (4th Cir. 2025) ............................................................... 5

*Pulliam v. Allen,*
  466 U.S. 522 (1984) .........................................................................14, 16

*Russell v. Hug,*
  275 F.3d 812 (9th Cir. 2002)......................................................... 8, 9, 12

iii

*Sheldon Whitehouse v. U.S. Dist. Ct. for the Dist. of R.I.*,
53 F.3d 1349 (1st Cir. 1995)................................................................. 7

*Stern v. U.S. Dist. Ct. for the Dist. of Mass.*,
214 F.3d 4 (1st Cir. 2000) .................................................................. 7

*U.S. Bancorp Mort'g Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994)............................................................................5

*United States v. Interstate Commerce Comm'n*,
337 U.S. 426 (1946)......................................................................... 7

*United States v. Munsingwear*,
340 U.S. 36 (1950) ........................................................................... 6

*United States v. Robinson*,
159 F.4th 277 (4th Cir. 2025) ..........................................................20

*United States v. Zingsheim*,
384 F.3d 867 (7th Cir. 2004) ...................................................... 10, 11

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ......................................................................... 16

**Statutes**

28 U.S.C. § 2071(a).........................................................................9

28 U.S.C. § 2071(c).........................................................................11

28 U.S.C. § 2071(d) ........................................................................11

42 U.S.C. § 1983 .............................................................................17

**INTRODUCTION**

Appellees adopted facially unlawful rules to govern proceedings in the District of Maryland. Harmed by the operation of those rules, the United States sued to challenge them. Yet the district court dismissed the government's suit at the threshold. Appellees identify no sound basis for that dismissal. Instead, they argue that this is an "unprecedented" and "extraordinary" "branch-on-branch lawsuit" challenging an "ordinary docket-control mechanism." Resp. Br. 1. That is wrong on all fronts.

Although Appellees dramatically claim on page 1 of their brief that the lawsuit is "unprecedented" and "extraordinary," they admit later on that a number of lawsuits have facially challenged local rules. *See* Resp. Br. 25-26 (collecting seven). Nor is it a "branch-on-branch" lawsuit, no matter how many times Appellees make that claim without defending it. Resp. Br. 1, 19, 22, 29. It is a lawsuit in the name of the United States, just like other *Debs* actions. *See In re Debs,* 158 U.S. 564 (1895). Nor were the Standing Orders an "ordinary docket-control mechanism": They reached far outside the courtroom to bar execution of removal orders. And Appellees have still not explained why the small but powerful handful of traditional remedies employed by district courts throughout history to protect parties' rights pending litigation—temporary restraining orders, preliminary injunctions,

1

and stays—are no longer sufficient. Those tools have sufficed in all manner of cases and throughout emergencies, upheavals, and times of war. American history has seen more sweeping executive actions and more pronounced surges in litigation, but not until the Standing Orders did a district court attempt to automate the granting of injunctive relief to every individual who files a habeas petition.

This lawsuit remains the most straightforward way to resolve the United States' legal challenges to the orders, and it does not reach beyond its acknowledged precursors in requesting facial relief from invalid standing orders. Appellees fail to resuscitate the district court's mistaken reasoning on standing, judicial immunity, or *Debs*. They supply a perfunctory defense of the standing order only as amended post-judgment, which serves only to highlight that the issuance of a post-judgment standing order has mooted any challenge to the two previous Standing Orders. And they unsuccessfully attempt to gin up a separation-of-powers violation out of any defendant's preference not to be sued. Ultimately, a lawsuit's permissibility does not depend on whether the defendant is happy to be sued or whether being sued is convenient for the defendant. No one is above the law—not even district judges. The Court should reverse and remand if it does not dismiss as moot.

2

## ARGUMENT

### I. This Challenge To Since-Rescinded Orders Is Moot, and *Munsingwear* Vacatur Is Warranted.

Appellees agree that there is "no indication that the District Court will return to the prior versions of the standing order," Resp. Br. 41 (internal quotation marks omitted), and they do not contest that the Court is free revisit the motions panel's determination regarding mootness. *See* Opening Br. 28 (citing *Castendet-Lewis v. Sessions*, 855 F.3d 253, 259 (4th Cir. 2017)); Resp. Br. 39-41. The Court should do so: After prevailing below, Appellees rescinded the challenged Standing Orders, from which the United States had sought solely prospective relief, and they issued a new, materially amended version. That mooted this challenge to the now-rescinded Standing Orders. Indeed, Appellees illustrate the amendments' materiality by defending the *new* standing order in the merits section of their brief— arguments that "w[ere] understandably not asserted previously" because they arise only from the new, post-judgment standing order. *New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 339 (2020) ("*NYSRPA*"); Resp. Br. 41-48. The Court should "not here decide that dispute about the new rule"; it should instead recognize that the case "has become moot on appeal" and "vacate the judgment with directions to dismiss." *NYSRPA*, 590 U.S. at 339 (internal quotation marks omitted).

3

Appellees contend that the case remains live because the United States has not sworn off any possibility of a future challenge to the post-judgment standing order, but a plaintiff need not swear off all future litigation in order for courts to recognize that a challenge to a defunct rule is moot. The *NYSRPA* plaintiffs were clear that they intended to keep challenging the new statute, but that did not save their case from mootness. *NYSRPA*, 590 U.S. at 339. Intent to challenge a new enactment is thus not material to the mootness analysis. *See, e.g., Maryland Highways Contrs. Ass'n v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991) (amendment mooted appeal even though new statute would "likely be the subject of a challenge" on the same grounds as the old statute).

Rather, when the amendments are material to the previously asserted legal theories, the challenge to the defunct enactment is moot. *See* Resp. Br. 41. That's the situation here, as Appellees show by pressing distinct arguments keyed to the post-judgment standing order, Resp. Br. 41-48, and as the United States explained by pointing out the ways the post-judgment standing order was plainly calculated to escape each of the government's challenges, *see* Opening Br. 28-29. The post-judgment standing order has "significantly alter[ed] the posture of the case," and this challenge to the defunct Standing Orders is accordingly moot. *Brusznicki v. Prince George's*

4

*Cnty.*, 42 F.4th 413, 419 (4th Cir. 2022) (punctuation altered); *see also, e.g.*, *Maryland Highways Contrs. Ass'n*, 933 F.2d at 1249 (concluding that post-judgment amendment mooted case because "[t]he statute challenged … no longer exists" and was "replaced" by "a new statute," which made more than "minor, insignificant modifications" to the old statute).

Appellees also argue in a footnote that *Munsingwear* vacatur would not be appropriate even if the case really is moot. Resp. Br. 41 n.8. "But a party forfeits an argument by taking only a passing shot at the issue in a footnote." *Platt v. Mansfield*, 162 F.4th 430, 443 n.8 (4th Cir. 2025) (internal quotation marks omitted). Regardless, Appellees do not dispute that they unilaterally superseded the Standing Orders after prevailing below. *See U.S. Bancorp Mort'g Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994) (explaining that vacatur is appropriate "when mootness results from unilateral action of the party who prevailed below"). Moreover, Appellees are incorrect to oppose *Munsingwear* on the ground that it would just "force the parties to rehash the same justiciability questions" if the United States were to file a new challenge in the future. Resp. Br. 41 n.8. "[C]lear[ing] the path for future relitigation of the issues between the parties" is an *express purpose* of *Munsingwear* that does not "prejudice[]" the parties, and vacatur "is commonly utilized in precisely this situation to prevent a judgment,

5

unreviewable because of mootness, from spawning any legal consequences."
*United States v. Munsingwear*, 340 U.S. 36, 40-41 (1950); *see Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (reiterating that the Supreme Court vacates judgments in these circumstances "*because* doing so 'clears the path for future relitigation of the issues between the parties'" (quoting *Munsingwear*, 340 U.S. at 40) (emphasis added)); 4th Cir. Dkt. 23 at 4.

## II.  The District Court Erred by Rejecting This Procedurally Proper Facial Challenge to a Court Rule.

### A.  The government has an equitable cause of action to enjoin an unlawful court rule.

Appellees do not deny that *Debs* and its progeny have long permitted the United States to sue, represented by the Executive Branch, to vindicate the nation's sovereign interests, even in the absence of a statutory cause of action. That makes their arguments (at 22-23) about implied causes of action irrelevant. The Supreme Court has spoken—repeatedly—on this issue. *See* Opening Br. 31-32. Appellees address only the facts of *Debs* itself, venturing not a word in response to the throng of diverse contexts in which *Debs* has borne fruit. *See* Opening Br. 32 (collecting a few cases).

Appellees instead recycle the district court's description of this action as a "branch-on-branch lawsuit" as opposed to a *Debs*-type action brought by "'the sovereign United States of America'—the whole of it." Resp. Br. 22-

6

23. But this lawsuit was filed in the name of the whole United States of America. It is not a branch-on-branch lawsuit; it is and has always been a suit in the name of the United States to vindicate the interests of the United States. *See* JA1, JA5 ¶ 12 (Complaint). Appellees repeatedly describe the lawsuit as a branch-on-branch action, but repeating an incorrect claim does not amount to an explanation and does not make it so.

Appellees inexplicably claim that "no prior Administration has ever sought to bring a suit that looks anything like this." Resp. Br. 24. What about the other facial challenges to district courts' unlawful rules? *Stern v. U.S. Dist. Ct. for the Dist. of Mass.*, 214 F.3d 4 (1st Cir. 2000); *Sheldon Whitehouse v. U.S. Dist. Ct. for the Dist. of R.I.*, 53 F.3d 1349, 1353 (1st Cir. 1995). Appellees do eventually (at 24-25) address those cases to offer the fragile distinction that they were brought in the name of an aggrieved Executive Branch official—but that would make them just the kind of inter-branch lawsuit that Appellees say is *not* permitted. Their distinction also does not account for past lawsuits brought by the United States seeking review of orders issued by an Executive Branch agency. *See, e.g.*, *United States v. Interstate Commerce Comm'n*, 337 U.S. 426 (1946); Opening Br. 33 (collecting other cases). Those suits were not brought in the name of aggrieved Executive Branch officials, and they prove that suits by the United

7

States itself are not "inter-branch" suits–for the same reason those suits were not (even more problematic) "*intra*-branch" suits. Appellees also complain that *Stern* and *Sheldon Whitehouse* did not reference *Debs*, but the well-established existence of that cause of action need not generate comment in every case whose basis it supplies, and Appellees suggest no other basis for the actions.

And what about the challenges brought by private parties? *See, e.g.*, *Russell v. Hug*, 275 F.3d 812, 815 (9th Cir. 2002); *Nat'l Ass'n for the Advancement of Multijurisdiction Prac. [NAAMJP] v. Roberts*, 180 F. Supp. 3d 46 (D.D.C. 2015). Appellees say these are all challenges to "rules governing out-of-court activities," as opposed to this challenge to "a standing order carrying out the core adjudicatory function of managing the court's docket." Resp. Br. 25. But that distinction was dreamed up just for this case, and Appellees cannot explain why it could be material to whether the United States can sue to vindicate its sovereign interests. If a district court created a rule that the United States cannot be represented at hearings in its courtrooms by women (or people of a particular race, or people who voted for a particular political candidate, or the like), because the district court has found hearings conducted by such attorneys to be especially frustrating and

8

unproductive, would the United States really be unable to facially challenge that rule just because it governs in-court activities?

Appellees' threadbare distinction doesn't accurately describe the cases, either. The Standing Orders *did* "govern[] out-of-court activities," because they enjoined the United States from removing illegal aliens—something that undoubtedly happens outside the courtroom. And other cases challenged rules about in-court proceedings, like who could be appointed to represent indigent litigants *in court. See, e.g., Russell*, 275 F.3d 812; *NAAMJP*, 180 F. Supp. 3d 46. Indeed, district courts' rulemaking power is limited to "rules for the conduct of their business," so the distinction makes little sense. 28 U.S.C. § 2071(a). *All* valid rules govern the conduct of judicial business.

Nor is it apparent why Appellees suggest a statutory cause of action would make a difference. *See* Resp. Br. 22, 24 n.4. If the problem is that suits by the United States or the Executive Branch against a district judge or district court are impermissible separation-of-powers violations, legislation would not fix that supposed constitutional problem.

Appellees' reference (at 28-29) to the "special factors" analysis applicable in the *Bivens* context is misplaced. We are aware of no case that has attempted to limit *Debs* actions by the United States by reference to anything resembling that analysis. Doing so would eviscerate this important

9

authority. And in any event, Appellees identify no factor that should preclude this action. Resolving this action in the government's favor would fix, not exacerbate, interference with "the authority of the other branches," *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)—Congress's authority to restrict review in immigration cases and the Executive Branch's authority to execute the immigration laws. Nor do the "alternative remedial structures" Appellees identify suffice here. Resp. Br. 28 (quoting *Egbert v. Boule*, 596 U.S. 482, 493 (2022)). Interlocutory appeals would present the threshold difficulties of mootness and appellate jurisdiction—additional risks to viability not present in this facial challenge. Opening Br. 48. Mandamus petitions present serious drawbacks, like the "'clear and indisputable' error" requirement which would practically immunize the orders from mandamus review if a panel viewed their legality as merely debatable or uncertain. Opening Br. 49.

Appellees respond (at 26) that the Seventh Circuit's decision in *United States v. Zingsheim*, 384 F.3d 867 (7th Cir. 2004), cuts against a facial challenge. But the Seventh Circuit was considering a mandamus petition, not a facial challenge. *Id.* at 869 ("[T]he United States has filed a petition for mandamus, asking us to expunge the standing order."). Contrary to Appellees' claim, the Seventh Circuit thus had no occasion to (and did not)

"explain[]" that there is no "equitable license for the Executive to sue an entire district court bench." Resp. Br. 26. Indeed, the Seventh Circuit would have created a circuit split if it had done so, but it did not purport to disagree with the existing precedent permitting such challenges. And the court concluded that it could not "blot the standing order from the books" because mandamus is limited to "direct[ing] the district judge to carry out a[] judicial duty," not because non-mandamus facial challenges are impossible as a general matter. *Zingsheim*, 384 F.3d at 870.

To be sure, *Zingsheim* concluded that mandamus was impermissible because the rule could be challenged via a petition submitted to the circuit's judicial council, which has the power to disapprove district courts' local rules. *See* 28 U.S.C. § 2071(c). But whatever special procedures may have been available in the Seventh Circuit when *Zingsheim* issued, the text of § 2071(c) appears to refer to the judicial council's own review of copies of rules "furnished to the judicial council" by the district courts promulgating them, *see id.* § 2071(d), not a petition-based process that private parties or the Department of Justice can initiate. Here, Appellees did not treat the challenged Standing Orders as local rules subject to § 2071, as illustrated by their issuance without notice and comment. And at any rate, § 2071(c) does not foreclose otherwise available judicial review, given that courts "regularly"

11

heard "challenges to local rules on a variety of grounds" prior to § 2071's enactment and that nothing in § 2071 "evinces a newly devised intent to divest the judiciary of [its] long-standing authority" to hear such challenges. *Baylson v. Discip. Bd. of Sup. Ct. of Pa.*, 764 F. Supp. 328, 334-35 (E.D. Pa. 1991).

More generally, Appellees try to manufacture a separation-of-powers problem with lawsuits like this one because they present risks of "practical interference." Resp. Br. 29-30. Most fundamentally, that does not suggest a separation-of-powers problem inherent in suits by the United States against district judges. Private litigants have also brought facial challenges to local rules, and all of Appellees' concerns would apply equally to those actions. *See, e.g.*, *Russell*, 275 F.3d 812; *NAAMJP*, 180 F. Supp. 3d 46. Indeed, Appellees' concerns would arise any time they must respond to legal process; nothing about their concerns stems from the identity of the plaintiff. That is inconsistent with their characterization of the issue as a separation-of-powers problem arising from the nature of the plaintiff in this case.

Nor is it remotely inconceivable for a district judge to have to respond to legal process on occasion. Judges are already nominal or actual defendants in mandamus petitions, misconduct complaints, and Federal Tort Claims Act claims or lawsuits, and they can and do file responses to mandamus petitions

and participate in other proceedings as needed. *See, e.g.*, Judicial Conference, *Federal Tort Claims Against Federal Judiciary Personnel*, https://perma.cc/UD93-TSFM. As for the need for Appellees to recuse from the case (*see* Resp. Br. 29), that says nothing about whether the lawsuit is permissible. Judges regularly recuse from cases; that is no unbearable burden or debasement. And the fact that there is an established mechanism for handling cases where *all* district judges are recused means that that circumstance arises with some regularity and can be dealt with efficiently and fairly, not that it is a symptom of dysfunction. Pursuant to that established mechanism, Judge Cullen was assigned to the case within days after the complaint was filed. *See* JA311.

To be sure, lawsuits like this one are rare. It is not common for a district court to adopt a local rule that infringes on the sovereign interests of the United States. Unfortunately, such rules have occasionally been adopted in the past, and lawsuits like this one have followed. *See* Resp. Br. 24-25 (collecting such cases). Despite the established possibility of lawsuits like this one—as well as facial challenges by private parties, which presumably would present the same practical concerns in Appellees' view—such lawsuits have *remained* rare. To our knowledge, not a single one has involved discovery (*see* Resp. Br. 30); nor will this one, which turns solely on questions of law.

13

Despite the established existence of facial challenges to rules like this one, the practical consequences Appellees fear have not arisen. This lawsuit will not bring the sky crashing down.

As for Appellees' altruistic concern that facial challenges could be brought against courts of appeals or even the Supreme Court, it is noteworthy that courts of appeals have apparently never adopted rules that have provoked facial challenge. We are aware of no model for such a lawsuit. And in order to get off the ground, any such lawsuit would have to account for the fact that district courts cannot review the decisions of superior courts. This lawsuit presents no such concerns.

### B. Judicial immunity does not bar the claims against the judges and clerk.

**1.** *Pulliam*'s holding is clear, and it clearly defeats Appellees' judicial-immunity defense. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."). The only way Appellees can argue otherwise is by drawing inferences from the fact that the immunity issue before the *Pulliam* Court involved a state judge. *See* Resp. Br. 34. Plainly, though, that factual setup cannot overcome the Court's own description of its reasoning, which turned not at all on the fact that a state court was involved. *See* Opening Br. 37-38 (discussing *Pulliam*, 466 U.S. at 536, 540).

14

Nonetheless, Appellees double down (at 35) on the notion that state courts are "inferior." That argument is inconsistent not only with *Pulliam* but also with the Supreme Court's holding that, "in the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement." *Butz v. Economou*, 438 U.S. 478, 500 (1978). The Court thus declined to adopt an artificial distinction between the rationale for immunity for federal as opposed to state officers, in reasoning that applies equally here. Appellees argue (at 36) that *Butz* "predates *Pulliam.*" But that timing is irrelevant because *Pulliam* neither expressly nor implicitly discredited any part of *Butz*'s reasoning. And although the district court said that *Butz* did not affect its reasoning because it did not involve "judicial immunity," JA195, *Butz* provides inescapable context for *Pulliam*'s holding—especially because *Pulliam* indisputably did not say its holding was limited to state-court judges, and any argument based on an *implicit* such holding must depend on inferences. Those inferences are invalid.

Nor does *Pulliam*'s statement about injunctions issuing only on "a showing of an inadequate remedy at law" support Appellees. *Contra* Resp. Br. 36. Appeal is not an adequate alternative here for reasons already explained. *See* Opening Br. 48-51. In any event, an appeal is not a "remedy"

15

in the relevant sense. *Pulliam*'s analysis regarding adequate remedies focused on the adequacy of *legal* remedies like damages as opposed to *equitable* remedies like injunctive relief. *Pulliam*, 466 U.S. at 537-38 ("The limitations already imposed by the requirements for obtaining equitable relief against any defendant—a showing of an inadequate remedy at law and of a serious risk of irreparable harm—severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." (footnote and citation omitted)).[1] Here, Appellees identify no remedy at law that would address the government's harms, even if one were sought (and none is sought here).

**2.** Appellees also argue (at 32) that promulgating the Standing Orders was within their "judicial capacity" and suggest that should end the inquiry. But in a judicial-immunity analysis, the difference between rulemaking and individual-case adjudications matters because challenges to the former do

---

[1] Defendants argue (at 33) that *Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021), does not support the government because it did not address an assertion of judicial immunity. But they misunderstand that decision's implications. *Jackson* made clear that the Supreme Court continues to understand *Pulliam* as holding that "the suit before [the Court] could proceed against a judge consistent with the distinct doctrine of judicial immunity," where "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation." *Jackson*, 595 U.S. at 42.

not involve the same concerns over collaterally interfering with another judge's decisions. That intuition is borne out by the absence of precedential authority holding judicial immunity bars suits for injunctive relief against rules (as opposed to lawsuits over individual-case decisions). Indeed, almost all of the judicial-immunity cases cited by Judge Cullen and by Appellees had to do with orders or actions in particular cases. *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (per curiam); *Gibson v. Goldston*, 85 F.4th 218, 221-23 (4th Cir. 2023); *Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001); *Akinro v. Blake*, 2007 WL 3020186, at \*1 (D. Md. June 8, 2007), *aff'd*, 235 F. App'x 75 (4th Cir. 2007); *see also* Opening Br. 36 (addressing other cases).

Although Appellees cite two unpublished district-court immunity decisions that did involve standing orders, neither one supports their position here. In *Majerska v. United States*, 2021 WL 4739602, at \*4 (D.N.J. Oct. 12, 2021), the district court purported to hold that a request for injunctive relief against a judge's standing orders was barred by judicial immunity, but its only reasoning for that holding focused not on immunity caselaw but on the plaintiff's failure to plead properly that "a declaratory decree was violated or declaratory relief was unavailable," as required for injunctive relief under 42 U.S.C. § 1983. And in *Cabrera v. United States*, 2021 WL 4311255, at \*3 (S.D.N.Y. Sept. 21, 2021), the court gave no

17

reasoning for its conclusion that "[i]ssuing standing orders" was "within the scope" of the defendant judge's "authority and jurisdiction, and she [was] therefore absolutely immune from suit for any claim arising from adoption of" the challenged standing order. Neither *Majerska* nor *Cabrera* offers a reason to ignore *Pulliam*'s clear holding.

**C.     The government has standing to seek injunctive relief.**

Because the district court's holding on standing applies only to the government's claim for injunctive relief (and not its claim for declaratory relief, *see* JA187), affirming it would not be enough to uphold the district court's dismissal. Regardless, though, that holding was meritless. And Defendants have no answer to the Supreme Court decisions clearly delineating the boundaries between Article III jurisdiction and the merits—boundaries elided by the district court's *Pulliam*-predicated standing analysis. *See* Opening Br. 43-46.

The government has standing to seek injunctive relief because it alleged injury (essentially conceded by the court below), causation (same), and redressability. *See* JA183-187. Although Appellees argue (at 38) that the government lacks redressability because the remedy sought is not available, their reasoning (like the district court's) is derived from their erroneous

18

reading of *Pulliam. See supra* pp. 14-18. It fails for the same reason their judicial-immunity argument fails.

The standing argument also fails because even if the underlying immunity analysis were correct, it would not mean there is a standing defect. Appellees assert (at 37) that the district court did not confuse the merits with standing because it "did not hold that the Executive lacks standing because, though the requested relief is available in theory, mootness or some merits defense makes it unavailable in practice." Instead, they say, the district court ruled that injunctive relief is categorically unavailable. Resp. Br. 37. But that framing does not rescue the district court's reasoning, which erred by confusing a non-jurisdictional defense (immunity) with a jurisdictional one (standing). *See Davis v. United States*, 564 U.S. 229, 249 n.10 (2011); *Chafin v. Chafin*, 568 U.S. 165, 174 (2013). An example highlights the difference: a plaintiff seeking damages for past injury plainly may have standing even if absolute immunity categorically bars that remedy on the merits. *See, e.g.*, *Nixon v. Fitzgerald*, 457 U.S. 731 (1982).

Even Appellees do not contest that immunity is a non-jurisdictional defense. Yet their argument falls into the same trap as the district court's by ignoring the Supreme Court's warnings against conflating such defenses with Article III issues. In *Chafin*, for example, the Supreme Court rejected the

19

argument that a lawsuit was moot because the federal district court lacked authority to issue the requested relief. 568 U.S. at 174. Appellees do not explain how the district court's decision here is consistent with that holding, and it is not: the district court here held that Article III standing was lacking because it lacked authority to issue an injunction against other federal judges.

Given their inability to defend the consistency of the standing holding with the Supreme Court's cases, Appellees do not solve the problem with their preferred appellate decisions. *See* Resp. Br. 38. *Gessele v. Jack in the Box Inc.*, 2026 WL 1075915 (9th Cir. Apr. 20, 2026), addressed neither standing nor judicial immunity. And in *United States v. Robinson*, 159 F.4th 277, 286 (4th Cir. 2025), a panel of this Court held that an appeal was moot because the district court's ruling was "valid regardless of how [the Court] answer[ed] [appellant's] question on appeal," and therefore, it could not "issue [appellant] any meaningful relief." The Court did not hold that redressability was absent because it categorically lacked the power to issue a type of appellate remedy (reversal of the district court's dismissal of a motion for habeas relief) or because a defendant was immune from suit. Thus, the Court's reasoning does not support Appellees' standing theory.

20

### III.   The Standing Orders Were Undisputedly Unlawful.

Appellees decline to defend the Standing Orders the United States challenged. Instead, they argue that the Court should consider the legality of the post-judgment standing order, and they press arguments based on the material differences in the text of the post-judgment standing order. That choice makes it impossible to deny that the post-judgment standing order has "signficantly alter[ed] the posture of the case," *Brusznicki,* 42 F.4th at 419 (punctuation altered). Indeed, Appellees correctly do not attempt such an argument.

The Court should not consider Appellees' arguments about the specifics of the post-judgment standing order for the first time on appeal. The Court regularly declines to do just that. *See, e.g., Carlton & Harris Chiro. Inc. v. PDR Network, LLC*, 982 F.3d 258, 264 (4th Cir. 2020) (Fourth Circuit "is a court of review, not of first view").

*Brusznicki* is not to the contrary. There, the plaintiffs challenged an ordinance governing sales of foreclosed properties. The statute was amended to distinguish between "properties unfit for habitation" and all other properties, mooting claims about one set of properties but leaving the plaintiffs with the same arguments about the other set of properties that they had pressed all along. *Brusznicki*, 42 F.4th at 417-18. The Court thus

21

considered whether the controversy remained live "in light of the statute as it now stands." *Id.* at 418 (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (alteration accepted)). For its part, that is all that *Hall* did, too, concluding that a challenge to a six-month residence requirement, which had been amended to reduce the requirement to two months, was moot when the plaintiffs had satisfied the criteria. 396 U.S. at 48 ("[U]nder the statute as currently written, the appellants could have voted in the 1968 presidential election. The case has therefore lost its character as a present, live controversy."). No one disputes that the Court should look at the post-judgment standing order to determine whether the case is moot. But if the Court concludes that the case is not moot because the challenges to the since-rescinded Standing Orders somehow remain live, it should consider the government's challenges to those orders—not challenges the United States has not pressed with regard to a new standing order it has not challenged.

Because Appellees' arguments are trained on defending the post-judgment standing order, they are not responsive to the United States' arguments. Beginning with Count I, Appellees point out that the post-judgment standing order specifies that it operates as a stay of authority to remove an alien habeas petitioner and defend it exclusively as an administrative stay. Resp. Br. 43-48. That is a marked difference from the

22

since-rescinded Standing Orders, which specified that they "ENJOIN[ED]" and "RESTRAIN[ED]" the "Government/Respondents" from "removing Petitioners from the continental United States or altering their legal status." JA65; *see* JA61. Those orders' language and operation differed starkly from this Court's standing order providing for "an administrative order staying removal." Fourth Cir. Standing Order 19-01. As the United States has explained, Appellees' since-rescinded Standing Orders indefensibly required automatic entry of a preliminary injunction or temporary restraining order. Opening Br. 52-55. Appellees do not attempt any defense of the previous Standing Orders' operation in this regard.

Likewise, Appellees' defense of the post-judgment standing order does not engage with the United States' explanation that the Standing Orders were unlawful because they barred district judges from even *considering* whether they had jurisdiction over any given case. *See* Opening Br. 55-58.

Last, Appellees present no defense of the rescinded Standing Orders' promulgation without notice and comment.

Because Appellees do not defend the Standing Orders, the Court should rule for the United States if it reaches the merits. And the fact that Appellees rely on provisions of the post-judgment standing order that differ from the provisions of the since-rescinded Standing Orders just emphasizes

23

and renders inescapable the materiality of those amendments. *See* Section I *supra*.

## CONCLUSION

For the foregoing reasons, the Court should reverse or should dismiss the appeal as moot and vacate the district court's decision under *Munsingwear*.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
    *Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney*
    *General*

*s/ Elizabeth Hedges*
ELIZABETH HEDGES
SARAH WELCH
  *Counsel to the Assistant Attorney*
    *General*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(771) 209-1978*
  *Elizabeth.T.Hedges@usdoj.gov*

May 20, 2026

25

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,185 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Elizabeth Hedges*

Elizabeth Hedges

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

*s/ Elizabeth Hedges*

Elizabeth Hedges

27